484 So.2d 986 (1986)
Elrick J. TAYLOR, Jr., Plaintiff-Appellee,
v.
Randy DUPREE, Joshua Joseph & Government Employees Ins. Co., Defendants-Appellants.
No. 84-1132.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
Writ Denied May 12, 1986.
*987 Voorhies & Labbe, E. Gregory Voorhies, Lafayette, for defendants-appellants.
Domengeaux & Wright, William P. Rutledge, Lafayette, for plaintiff-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Joshua Joseph appeals an adverse jury verdict finding him, the employer of Randy Dupree, and his insurer, Government Employees Insurance Company, solidarily liable to Elrick J. Taylor, Jr. for damages Taylor received in a vehicular collision. The jury found Joseph vicariously liable for Dupree's negligence in backing a truck into Taylor's automobile, and awarded him $160,000 damages. Joseph appeals contending: (1) that Taylor's claim against Joseph has prescribed; (2) the jury erred in finding Dupree was in the course and scope of his employment with Joseph when the accident occurred; and (3) the damages *988 awarded to Taylor are excessive. We affirm.

FACTS
Joshua Joseph has operated a grocery, market and slaughterhouse since 1972, and has employed Randy Dupree as a butcher, deliveryman, and general worker since its opening.
On the morning of December 2, 1981, Curtis Wyble ordered pork from Joseph's for resale in his own market; when Wyble was unable to take delivery of the pork at Joseph's after two unsuccessful attempts, Dupree, who routinely made deliveries, agreed to deliver the meat to Wyble's grocery.
Dupree left Joseph's market in a pickup truck owned by Joseph en route to Wyble's. Unable to enter Wyble's because the parking lot was full, Dupree stopped his vehicle in the southbound lane of La. Hwy. 31 just past the entrance; when Dupree perceived no oncoming traffic he attempted to back across the northbound lane of La. 31 into Wyble's parking lot. Dupree failed to see Taylor's automobile approaching in the northbound lane of La. 31; Taylor, who was traveling within the speed limit, swerved toward the shoulder of the roadway on his side of travel in an attempt to avoid the collision. Taylor's evasive action proved fruitless. Dupree's delivery truck collided with Taylor's automobile in the northbound lane of travel, striking on the driver's side, narrowly missing the front door, and shoved Taylor's vehicle into Wyble's mailbox, just off the highway beyond the driveway to Wyble's parking lot.

PRESCRIPTION
Joseph contends in his brief that Taylor's claim against him has prescribed. Joseph did not file a formal pleading raising the issue of prescription at either the trial or appellate level, but rather raises the issue only in his brief. The jurisprudence is settled that although the peremptory exception of prescription may be filed for the first time in the appellate court, it must be presented in a formal pleading. Regardless of the probable merit of Joseph's exception, the peremptory exception of prescription can not be injected as an issue in the case by brief or oral argument. LSA-C.C.P. arts. 927, 2163; Eschete v. Gulf South Beverages, 442 So.2d 556 (La.App. 1st Cir.1983). Accordingly, the question of prescription is not properly before the court, and therefore is rejected.

JOSEPH'S VICARIOUS LIABILITY
Joseph contends that the jury erred in its determination that Dupree was acting in the course and scope of his employment at the time the accident occurred. Joseph argues that he did not give Dupree permission to make a delivery of meat to Wyble. We can not agree with Joseph's argument.
Employers are answerable for the damages occasioned by their employees in the exercise of the functions in which they are employed. LSA-C.C. art. 2320; Daniels v. Conn, 382 So.2d 945 (La.1980). The jurisprudence establishes a rebuttable presumption that when an employee is driving his employer's vehicle at the time of the accident he is acting in the course and scope of his employment; therefore, the employer will be responsible to third parties for damages sustained as a result of the employee's negligence. Only strong and convincing evidence will rebut this presumption. Windham v. Security Ins. Co. of Hartford, 337 So.2d 577 (La.App. 4th Cir.1976), writ denied, 341 So.2d 407 (La. 1977); Cofield v. Burgdorf, 238 La. 297, 115 So.2d 357 (1959).
The determination of whether an employee using his employer's vehicle is acting within the course and scope of his employment is dependent upon the facts of each case. Wright v. Romano, 279 So.2d 735 (La.App. 1st Cir.1973), writs denied, 281 So.2d 757, 758 (La.1973). Two considerations of importance in this determination are (1) whether the employer was benefited by the manner in which the vehicle was being used, and (2) whether the employee was acting in the service of his *989 employer at the time of the accident. Windham, supra.
The sole argument Joseph makes is that he did not give Dupree prior approval to use one of the business vehicles to deliver meat to Wyble. We deem it of importance that: Dupree routinely made meat deliveries; the vehicle involved in the accident was one of three vehicles available to make deliveries; the accident occurred during regular working hours; he was delivering meat ordered by one of Joseph's customers; and Dupree's delivery directly benefitted Joseph's business. Joseph, though denying that he gave Dupree specific permission to make the particular delivery in question, has failed to establish any policy which required his permission each time prior to making a business delivery. It is clear that Joseph failed to rebut the presumption of liability. There is nothing in the record to show that the jury was manifestly erroneous in making its decision that Joseph was vicariously liable as the employer for Dupree's actions. See Canter v. Koehring Company, 283 So.2d 716 (La. 1973).

QUANTUM
Joseph next contends that the jury's award of $160,000 to Taylor was excessive, and that this court should reduce the damage award to $60,000.
It is well established that before a reviewing court can disturb an award made by a trial court, the record must clearly show that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); Reck v. Stevens, 373 So.2d 498 (La. 1979). In Coco, the Supreme Court stated:
"Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. [Citations omitted.] It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
Since the jury does have great discretion in setting damages, the proper test for whether a quantum award can be upheld revolves around a determination of whether the facts and circumstances peculiar to this case and this individual, interpreted in a light most favorable to the plaintiff, reasonably support the jury's decision. Schexnayder v. Carpenter, 346 So.2d 196 (La. 1977); Reck, supra.
In the present case the trial court did not utilize either special verdicts or interrogatories itemizing the elements of damage. A lump sum judgment of damages is presumed to award all items of damage claimed, and the appellant's burden of proving the fact finder clearly abused its great discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1st Cir.1983), writs denied, 433 So.2d 1056, 1057 (La.1983). When a general verdict has been used, each case must be analyzed on its own facts and circumstances, and each element must be examined to determine whether the jury committed manifest error. Washington v. Lake City Beverage, Inc., 352 So.2d 717 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 1050 (La.1978).
The jurisprudence has established that plaintiff must prove the damages in a tort case by a preponderance of the evidence. Green v. Superior Oil Co., 441 So.2d 54 (La.App. 3rd Cir.1983). Proof sufficient to constitute a preponderance must establish that the fact sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
The keystone of Joseph's objection to the jury's quantum award is that Taylor was not injured in the collision to such an extent as to require knee surgery and surgical *990 treatment of the back. He argues that Taylor's injuries were a lumbosacral strain and probable whiplash, and that as of May 19, 1982, the date of Taylor's discharge from Dr. Fred Mayer, Jr., he had expressed no complaint of back or neck pain since January 11, 1982, and his knee engendered only occasional complaints. Accordingly, our initial inquiry entails an examination of the record to determine whether Taylor has sufficiently proven his damage claim.
Taylor was born on July 11, 1948, and at the time of the accident on December 2, 1981, he had been employed as an insurance salesman for 13 years. He worked from his home and drove various distances following leads on potential insurance clients. Taylor's federal tax returns for the years 1978-1981 reflect an average gross income of $27,126 annually. He has not worked at all since the accident and currently draws social security disability. He has a high school education.
In his petition for damages, Taylor sought loss of wages, impairment of future earning capacity, pain and suffering, past and future medical expenses, past and future disability, and automobile damages.
Dr. Louis Weinstein treated Taylor on the day following the accident for pain in the lower back, neck and left knee. He observed muscle spasms in the back with associated limited range of motion of the back. X-rays of the back, neck and left knee showed no fractures or dislocations. He prescribed muscle relaxants and a cervical collar. He last saw Taylor on December 14, 1981, when Taylor advised him that he decided to consult an orthopaedist. Because of the cervical strain and muscle spasms he opined Taylor was unable to work at that time.
Taylor next consulted Dr. Fred Mayer, Jr., an orthopaedic surgeon, on December 29, 1982. Taylor's initial complaints were of neck and lower back pain, numbness of the right foot, and pain and locking of the left knee. Dr. Mayer observed no muscle spasms in the neck and back, though Taylor complained of tenderness in both regions; there was bruising on the right lumbar area and neck motion was restricted. Taylor's left knee exhibited a loud clunking sound on flexion and extension indicative of a possible tear of the ligament or cartilage. He treated him conservatively and although Taylor expressed fewer complaints of the neck and back, he eventually hospitalized Taylor so that an arthrogram of the left knee could be conducted. Although the arthrogram showed a normal left knee, Taylor continued to have problems with the knee locking up and causing pain. At the end of his treatment, since Taylor continued to report problems with the left knee, Dr. Mayer thought that an arthroscopic examination of the knee was necessary. The arthroscopic examination was not performed because of Taylor's lack of insurance coverage. Without the benefit of the additional arthroscopic examination and because the arthrogram that was taken is not 100% accurate, Dr. Mayer's diagnosis was that Taylor had a left knee sprain. Dr. Mayer noted no additional complaints by Taylor of his neck and back. As of the time of Taylor's last visit on May 19, 1982, Dr. Mayer had not released him to return to work.
Taylor testified that because of continued back and knee pain during treatment by Dr. Mayer, he sought a second opinion from Dr. John Watermeier, an orthopaedic surgeon. Dr. Watermeier first examined Taylor on July 1, 1982, and from that evaluation concluded that Taylor sustained a lumbar disc and left knee problem as the result of the December 2, 1981, automobile accident. On July 22, 1982, surgery confirmed a tear of the medial meniscus of the left knee and the meniscus was removed. Taylor remained hospitalized until July 25, 1982, and returned to Dr. Watermeier on August 4 for follow-up examination of the knee; at that time evaluation of his back injury commenced. By November 16, 1982, Taylor's knee progressed well, but his back pain increased and pain radiating into the right leg was noted. Because the CAT scan indicated a bulging disc at the L5, S1 level and Taylor experienced pain in the right leg during the lumbar discogram, Dr. *991 Watermeier surgically injected chymopapain in Taylor's back at the L5 level on April 22, 1983, to relieve the back and leg pain which persisted from the date of the automobile accident. As of the time of trial, Dr. Watermeier assigned Taylor a 10% permanent disability to his left knee and his lower back; he further found Taylor totally disabled up to the time of trial, and restricted Taylor's future activities so as to exclude bending, stooping, lifting, prolonged walking and standing and the prolonged operation of motor vehicles. Dr. Watermeier opined that Taylor's back and knee problems were the result of the December 2, 1981, automobile collision with Dupree. In conclusion he opined that as of June 7, 1984, Taylor could begin light work, with a recommendation that he discontinue his former work selling insurance which required extensive driving of an automobile.
In addition to the orthopaedic treatment of Dr. Watermeier, on May 21, 1984, Taylor began consulting Dr. Lexman Kewalramani, a board certified physician in physical medicine, rehabilitation and electrodiagnosis, for the purpose of controlling his back and leg pain in hopes of avoiding further surgical intervention. Dr. Kewalramani confirmed the diagnosis of Dr. Watermeier and initiated Taylor on a lifelong program of rehabilitative treatment commencing with anti-inflammatory medication, the application of moist heat to decrease the stiffness, spasm and pain, and eventually the commencement of a daily regimine of exercise. He found no exaggeration of pain by Taylor, and his medical evaluation reaffirmed the genuineness of Taylor's complaints. Dr. Kewalramani opined that there was a connexity between Taylor's injuries and the accident, and that there was a 20% chance that Taylor would need further back surgery.
The medical bills introduced in connection with the various medical treatments totaled $12,734.44.
Joseph argues that there was a marked discrepancy between Taylor's testimony regarding his complaints, and the medical findings presented by the various physicians. The jury was presented with the various testimonies, and made its own evaluation based on the evidence. We will not disturb a jury's determinations when its findings are supported by the record. Richoux v. Hebert, 449 So.2d 491 (La.App. 3rd Cir.1983), writ denied, 450 So.2d 368 (La.1984). There is abundant evidence of the injuries Taylor suffered and their connexity to the December 2, 1981, accident. Taylor's inability to work after the accident until the time of trial, and his severely restricted ability to earn future income because of his permanent disabilities were well supported by the evidence. Therefore, in this particular case, after thoroughly reviewing the record, we cannot state that the jury abused its discretion in awarding Taylor $160,000 damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Joshua Joseph.
AFFIRMED.