673 So.2d 215 (1996)
Boyd E. PERRITT, et al., Plaintiffs-Appellees,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendants-Appellants.
No. 95-1274.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1996.
Rehearing Denied May 30, 1996.
*216 Charles Gordon Tutt, Lisa R. Dunn Folsom, Shreveport, for Commercial Union Insurance Co.
Timothy Robert Fischer, Shreveport, for Mitchell & Rita Odom.
Ronald E. Corkern Jr., Natchitoches, for Empire Fire & Marine Ins. Co.
Before KNOLL, THIBODEAUX and WOODARD, JJ.
KNOLL, Judge.
Mitchell Odom, plaintiff in reconvention, was injured when the eighteen wheeler he was driving collided with a mobile home that was being moved and pulled onto Louisiana Highway 120, near the town of Belmont, in Sabine Parish, Louisiana. Mitchell Odom and his wife, Rita Odom, have perfected this appeal and assign two errors: Mitchell Odom assigns as error the jury's failure to award more than $15,000 for past and future lost earnings; and, Rita Odom appeals the jury's award of only $2,500 for loss of consortium. For the reasons below, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
Mitchell Odom was employed as a tanker truck driver by Mathews Trucking Company. On December 27, 1991, he was transporting a tanker trailer nearly full of salt water on Highway 120 in Sabine Parish. Boyd Perritt moved mobile homes for a living, and that morning he was preparing to remove a mobile home from a lot adjacent to Highway 120.
December 27, 1991, was a gloomy day. It had been raining earlier, and the roadway was still wet. Boyd Perritt had placed two flagmen to warn oncoming traffic as he pulled the mobile home onto Highway 120, blocking both lanes. As Mr. Odom rounded a curve in the road, he saw the mobile home across the roadway. Only later did he notice the flagman. Although he was not driving at an excessive rate, Mr. Odom was unable to stop his rig in time. Mr. Odom's tanker truck struck the mobile home and overturned in a roadside ditch. Mr. Odom was slammed about inside the cabin of the eighteen wheeler.
Lee Isgitt, a state trooper, investigated the accident scene. His investigation revealed that several of the trailer's brakes were inoperative and had not functioned for some time before the accident. Mr. Odom, who was ambulatory at the accident scene, stated that he had been having trouble with the brakes. He stated that he had informed his employer of the problem, but that they had failed to repair the brakes.
The case was tried before a jury between September 26, 1994, and October 1, 1994. The jury returned a verdict assessing Mitchell Odom with 20% fault, Boyd Perritt with 30% fault, and Mathews Trucking with 50% fault.
The jury found that Mitchell Odom suffered the following damages: past medical expenses$14,115.75; lost earnings past and future$15,000; and general damages $100,000. The jury also awarded Rita Odom $2,500 for loss of consortium.
Mitchell Odom asserts that the jury abused its discretion in awarding only $15,000 for lost earnings, past and future. The defendants counter assert that Mr. Odom offered inadequate proof of his lost earnings and that the jury's award is supported by the record evidence. The defendants point out numerous errors in the assumptions relied on by the plaintiff in proving lost earnings.

*217 MEDICAL HISTORY
Mr. Odom was taken to Mansfield Family Medicine, where he was examined by Dr. Leigh Dillard. Dr. Dillard noted mild back pain and twitching in Mr. Odom's left leg. Dr. Dillard referred Mr. Odom to Dr. David A. Cavanaugh, a neurosurgeon in Shreveport, for a neurological evaluation. Dr. Cavanaugh was the only physician who testified at trial.
Dr. Cavanaugh first saw Mr. Odom on January 15, 1992. Mr. Odom related that although his back pain had lessened since the accident, he continued to experience twitching in his leg. Mr. Odom also told Dr. Cavanaugh about a pelvic injury in 1978 in which he experienced residual weakness in his left ankle and foot. Dr. Cavanaugh ordered a cervical MRI and a lumbar MRI, but could find no definite cause of Mr. Odom's twitching.
Dr. Cavanaugh referred Mr. Odom to Dr. Victoria M. Vernon, a physiatrist, for electrical studies to determine the source of the leg twitch. On January 31, 1992, Dr. Cavanaugh reviewed Dr. Vernon's results and ruled out any serious involvement of the nerves in the lumbar spine. He cleared Mr. Odom to return to work at this time.
The next time Dr. Cavanaugh saw Mr. Odom was April 14, 1992. In the interim, Mr. Odom had sought a second opinion from Dr. Nabil A. Moufarrej, a neurologist at Willis-Knighton Medical Center. Dr. Moufarrej repeated the MRI and nerve conduction tests, and requested that Dr. Cavanaugh reevaluate Mr. Odom because Dr. Moufarrej felt that Mr. Odom would require surgery. In the course of this reexamination, Dr. Cavanaugh learned that Mr. Odom had injured his back while "pulling a water well" on his property, and that he had stayed in bed for three days because of severe back pain following this incident. Dr. Cavanaugh stated that Mr. Odom's symptoms were about the same as in his January examination. Dr. Cavanaugh felt that surgery was not necessary in that it would not relieve the symptoms suffered by Mr. Odom. Dr. Cavanaugh referred Mr. Odom to Dr. Richard M. Zweig at L.S.U. Medical Center, because he was still unsure of the source of Mr. Odom's leg twitching. Dr. Zweig opined one component of the problem in Mr. Odom's leg was caused by an aggravation of the 1978 injury.
Dr. Cavanaugh examined Mr. Odom on June 18, 1992. He began to note definite atrophy in the muscles of the left leg. Although Dr. Cavanaugh was concerned about the atrophy, he did not recommend surgery because he did not feel that the problem could be corrected through lumbar surgery.
The atrophy continued through November 17, 1992, when Dr. Cavanaugh again examined Mr. Odom. Mr. Odom was beginning to have trouble walking because of weakness in his left leg. He also continued to have a dull backache. Dr. Cavanaugh ordered a lumbar myelogram and a CT scan to be absolutely certain that surgery would not relieve the left leg symptoms, but once again he could note no nerve compression that would account for the atrophy of the left leg.
Finally, Dr. Cavanaugh referred Mr. Odom to Dr. Austin Sumner of L.S.U. Department of Neurology for an evaluation. On January 6, 1993, Dr. Sumner reported findings consistent with those of the other physicians, and opined that the left leg symptoms were an aggravation of the 1978 injury. By Dr. Cavanaugh's final examination of January 28, 1993, Mr. Odom's leg had stabilized, and his back pain had lessened. Dr. Cavanaugh felt that Mr. Odom had reached maximum improvement.
Dr. Cavanaugh did not feel that he could evaluate Mr. Odom's disability. The record reflects that Dr. Cavanaugh initially felt that Mr. Odom could return to work as a truck driver. At the time of trial, Dr. Cavanaugh stated that although he knew that Mr. Odom had resumed work as a truck driver, he did not recommend that job for Mr. Odom because of the extended periods that truck drivers remain seated. Nevertheless, Dr. Cavanaugh also stated that he would not oppose Mr. Odom from driving a truck if he was able to take rest stops every hour or so.
Mr. Odom's disability was further addressed by Richard Galloway, Ph.D., a rehabilitation counselor in Nachitoches. Dr. Galloway saw Mr. Odom on June 24, 1993. By this time Mr. Odom had returned to work as *218 an independent truck driver. Although Dr. Galloway was concerned with the impact of Mr. Odom's injury on his ability to drive a truck, he did not recommend that Mr. Odom change jobs because Mr. Odom had told him that he was making a good living as an independent trucker. Mr. Odom reported to Dr. Galloway that he was making $1,500-$1,800 per week.

LAW AND DISCUSSION
Our treatment of the plaintiff's issues rests on the application of our jurisprudential rules on manifest error, which are well established. Absent a finding of manifest error, we must affirm.
Before an appellate court can disturb a jury's award of damages, the record must clearly show an abuse of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court stated:
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record viewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
Rosell, 549 So.2d at 844.
The jury did not differentiate between past and future earnings, and its award is presumed to include both past and future lost earnings. Therefore, the appellant's burden of proving an abuse of discretion in these awards is more difficult because the intention to award a specific amount for each item is not readily ascertainable. Taylor v. Dupree, 484 So.2d 986 (La.App. 3 Cir.), writ denied, 488 So.2d 201 (La.1986).
In Louisiana, the plaintiff must prove by a preponderance of the evidence the damages caused by the tortfeasor's fault. Proof is sufficient to constitute a preponderance when it shows that the fact sought to be proved is more probable than not. Green v. Superior Oil Co., 441 So.2d 54 (La.App. 3 Cir.1983).

PAST WAGES
In ANMAC Foundation, Inc. v. Saint Patrick Hospital, 594 So.2d 951 (La.App. 3 Cir.1992), this court addressed the issue of proving lost past wages, stating:
The burden is on the plaintiff to prove that he has suffered a loss of income. Carter v. State Farm Mut. Auto Ins. Co., 548 So.2d 53 (La.App. 3 Cir.1989). Accordingly, we have held that a plaintiff must prove the length of time he missed work due to the accident. Rougeau v. Commercial Union Ins. Co., 465 So.2d 178 (La.App. 3 Cir. 1985).
ANMAC, 594 So.2d at 956.
We note that once the time period of disability has been established, past lost wages can be calculated to a mathematical certainty, and an award for this element of damages is not subject to the much discretion rule. Ammons v. St. Paul Fire and Marine Insurance Co., 525 So.2d 60 (La.App. 3 Cir.), writ denied, 525 So.2d 1045 (La.1988). Nevertheless, the issue in this case is the determination of the date of disability.
Conflicting evidence was adduced on the issue of when Mr. Odom was able to return to work. The earliest interpretation of the date that Mr. Odom could return to work was given by his treating physician, Dr. Cavanaugh, who stated that Mr. Odom could return to work on January 31, 1992. Mr. Odom did not return to work at this time. Mr. Odom testified that he tried to return to work as a truck driver some five months after the accident, but that he was unable to do so because of his leg condition. This subsequent attempt to return to work came after he related the incident in which he injured his back "pulling a water well." The record shows that in April of 1993, Mr. Odom began work as an independent trucker.

*219 FUTURE EARNING CAPACITY
To obtain an award for future loss of earning capacity, a plaintiff must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248 (La.1991). Future lost earnings, which are inherently speculative, must be proven with reasonable certainty. Purely conjectural or uncertain future lost earnings are not allowed. Lasha v. Olin Corp., 91-459 (La.App. 3 Cir. 3/2/94); 634 So.2d 1354.
To prove his loss of earning capacity, Mr. Odom introduced into evidence his tax returns for the years 1987-1993. Also introduced was an income statement prepared for the year 1994. Mr. Odom's W-2's indicated that he averaged $30,080 per year for 1990 and 1991, then in 1992, only $666.70. In April 1993, he started his own trucking business and reported a net income of $13,010 for that year. In 1994, his income statement reflected less than a $4,000 annualized profit. Mr. Odom's cousin, Mark Odom, prepared Mr. Odom's tax and income statements.
Dr. Melvin Harju, an economist, testified as an expert for Mr. Odom's lost earning capacity over an expected 21.2 year work life. He based his calculations on a pre-accident income of $30,080 and a post accident income of $10,712. He testified that he took the tax returns at face value and that he did not attempt to determine whether the incomes and expenses contained therein were accurately reported. He determined that an award of $319,865 would compensate Mr. Odom for lost earning capacity.
Defendants persuasively pointed out numerous inaccuracies in the financial statements introduced by Mr. Odom. Through the testimony of Mark Thomas, a CPA who reviewed Mr. Odom's statements and business records, the defendants were able to show that Mr. Odom had underreported his income for the post accident period. In 1994, Mr. Odom's income statement reflected only the deposits and withdrawals from his business checking account. This is an inadequate measure of income in that any checks that were simply cashed rather than deposited would not show up as income. Mr. Thomas pointed to several instances where the truck's log book showed that the truck was operating, and he stated that he could find no income reported for the trips. Mr. Thomas also pointed to inadequacies in the reporting of expenses. Instead of paying expenses in check, Mr. Odom would write checks to cash, cash the checks, and use the cash for expenses. Therefore, there was no way to tell whether the cash was used for personal or business expenses. Finally, Mr. Thomas noted that his review of the records revealed numerous personal expenses improperly deducted as business expenses. Among these expenses were expenditures for tobacco and alcohol, repairs to personal vehicles, and a trampoline.
As a result of these inaccuracies, Mr. Odom's post accident income was greatly underestimated. Since Dr. Harju relied on the accuracy of these income statements in calculating lost earnings over a 21.2 year period, the amount of lost earning capacity was greatly magnified. Because of lack of accurate financial records, Mr. Thomas stated that he could not estimate the actual earnings for the post accident period.
The medical evidence indicates that Mr. Odom suffers from weakness in his left leg. Dr. Cavanaugh indicated that truck driving would not be the ideal occupation for Mr. Odom. Nevertheless, the record indicates that Mr. Odom has driven his truck on a regular basis since becoming an independent trucker in April 1993. Furthermore, Mr. Odom indicated to Dr. Galloway that he was earning $1,500-$1,800 per week.
Based on a thorough review of the record, we cannot say that the jury abused its discretion in awarding only $15,000 in past and future earning capacity. The plaintiff carries the burden of proving the length of time that he was unable to work, and he must prove his lost earnings with reasonable certainty. The jury obviously felt that the evidence preponderated in the favor of the defendant in the case sub judice, and there was a reasonable basis for that determination. A reasonable view of the record indicates that Mr. Odom was disabled for only one month as a result of the accident, and that upon his return to work, he earned as much as he had before the accident. Although we may have weighed the evidence differently upon a de novo review, we cannot say that the conclusions *220 reached by the jury were an abuse of its much discretion. We could amend this award only if we found manifest error, which we do not. The record clearly shows a reasonable basis for the jury's finding; therefore, we cannot substitute our reasonable view for the jury's reasonable view. Stated simply, the record clearly supports that the jury did not commit manifest error. Therefore, the jury's award is affirmed.

LOSS OF CONSORTIUM
Mrs. Odom asserts that the $2,500 award for loss of consortium was an abuse of the trial court's discretion.
We have carefully reviewed the record and the evidence presented on this issue was weak.
We note that the jury's determinations of credibility, and their opportunity to view the testimony regarding loss of consortium are crucial to such a claim. Based on a review of the individual circumstances of the case sub judice, we cannot say that the award of $2,500 for loss of consortium was an abuse of the jury's discretion. There is no record evidence to demonstrate that the jury committed manifest error. Therefore, this award is affirmed.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants.
AFFIRMED.