739 So.2d 996 (1999)
Shirley HARPER, et ux., Plaintiffs-Appellants,
v.
Alfred W. GARCIA, et al., Defendants-Appellees.
No. 32,142-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*999 Hudson, Potts & Bernstein by Charles W. Herold, III, Monroe, Counsel for Appellants.
James R. Herron, Davenport, Files & Kelly, by Mike C. Sanders, Monroe, Counsel for Appellees.
Before NORRIS, C.J., and BROWN, KOSTELKA, JJ.
KOSTELKA, J.
In this personal injury action, Shirley and Hollis Harper ("plaintiffs") appeal the trial court damage award and findings regarding causation and extent of injuries. We affirm.

FACTS
On May 19, 1993, Shirley Harper and her granddaughter traveled east on Highway 80 in Richland Parish, Louisiana, when they crossed a bridge west of Rayville. Simultaneously, Alfred Garcia, traveling west on the same roadway, crossed the bridge in a one-ton truck which pulled an agricultural spraying rig. As the two drivers met, a spray boom arm from the sprayer unfolded into Harper's lane of travel and collided with her vehicle. Harper was transported to and later released from Richardson Medical Center in Rayville after examination for neck pain and lacerations.
Plaintiffs, individually, and on behalf of their minor granddaughter, Misty Crawford, instituted suit against Crowville Grain & Elevator Company,[1] Garcia, Pro-Boll, Inc. (Garcia's employer), and Mutual Services Insurance Company (the insurer of Pro-Boll, Inc.), alleging negligence and praying for damages. After the defendants stipulated liability, the only issues remaining for trial were causation and the extent of injuries and damages.
On September 3, 1998, the trial court rendered judgment in favor of the plaintiffs, awarding $20,000 in general damages for mild-to-moderate aggravation of preexisting degenerative arthritis in the neck and lower back, and minor cuts, bruises and soreness associated with the accident; $3,797 in medical expenses; and, $5,000 to Hollis Harper in consortium damages. The court denied plaintiffs' claim for lost wages and damages related to temporomandibular joint ("TMJ") dislocation. Plaintiffs now devolutively appeal that judgment.

DISCUSSION

Force-of-Impact Testimony
Plaintiffs first argue that the trial court's reliance upon expert testimony regarding the force of impact is legal error which interdicted the fact-finding process and entitles them to de novo review by this court. In the alternative, plaintiffs argue that the trial court committed manifest error in relying on the force-of-impact testimony in determining causation and extent of injuries.
At trial, defendants presented the testimony of Dr. Dale Anderson, an expert in accident reconstruction, with expertise in mechanical engineering. In his reasons for judgment, the trial judge specifically accepted this expert's testimony that the force of the collision was "relatively minor" and considered these findings as a "factor" in determining the causal connection between Harper's injuries and the accident. Consistent with that statement, the court also considered the corroborating testimony of lay witnesses, State Trooper Gary *1000 Beasley, who serviced the scene, Alfred Garcia and the medical testimony regarding the cause and extent of injuries.
The language cited by plaintiffs regarding this court's historical avoidance of the precedent of attempting to measure an injury in direct proportion to the force of a collision was utilized specifically in instances where appellants sought to have this court discredit or attach less weight to medical and lay testimony in favor of the argument that the impact of the subject accident was so slight it could not have caused the complained of injuries. See Simpson v. Caddo Parish School Board, 540 So.2d 997 (La.App. 2d Cir.1989); Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981); Seegers v. State Farm Mutual Automobile Insurance Co., 188 So.2d 166 (La.App. 2d Cir.1966). The original language was most recently clarified in Starnes v. Caddo Parish School Board, 598 So.2d 472, (La.App. 2d Cir.1992), where this court succinctly refused to use the force of impact "as the determining factor in assessing the severity of the plaintiff's injuries." We read this jurisprudence to support consideration of force-of-impact testimony as a relevant factor in determining causation or extent of injuries, although not as the sole or determinative element. Accordingly, the trial court's ruling, consistent with these precepts, demonstrates neither legal nor manifest error.
Plaintiffs also contend that the trial court committed manifest error in accepting Dr. Anderson's testimony because he was not qualified to show how the force of impact injured Harper and presented unreliable testimony.
It is well settled that the testimony of each witness qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoint of sincerity and common sense. Quinones v. U.S. Fidelity and Guaranty Co., 93-1648 (La.01/14/94), 630 So.2d 1303. The effect and weight to be given an expert's testimony depends upon the validity of the underlying facts relied upon by the expert and rests within the broad discretion of the trial court. Head v. Head, 30,585 (La.App.2d Cir.05/22/98), 714 So.2d 231; Fry v. Southern Pacific Transportation Co., 30,548 (La.App.2d Cir.06/24/98), 715 So.2d 632, writs denied, 98-1986 (La.10/30/98), 727 So.2d 1170, 98-2033 (La.10/30/98), 728 So.2d 387.
Because Anderson's force-of-impact testimony was relevant to the trial court's determination of causation and extent of injuries, we find no merit to plaintiffs' argument that his testimony should not have been considered because he was not qualified to testify how the force of impact injured Harper. Moreover, because the record substantiates the facts upon which Anderson's opinion was based, the trial judge acted within his broad discretion in considering and accepting that testimony. The court's Reasons for Judgment show its understanding of the limited nature of Dr. Anderson's testimony, i.e., that he was qualified to testify only as to the force of the collision and not how that impact injured Harper. Accordingly, the court appropriately exercised its broad discretion in assessing both the credibility and weight to be given this testimony. We detect no manifest error in those determinations.

Causation and Extent of Injuries
Plaintiffs argue that the trial court erred in finding that the accident only aggravated preexisting back and neck arthritis. Particularly, they urge the trial court failed to consider that the record showed Harper to have complained of back pain to Dr. Vernon Baldwin prior to March 10, 1994, and improperly considered Dr. Baer Rambach to have been Harper's treating physician, thereby assigning greater weight to his conclusions than the contrary opinions of Drs. Douglas Brown and Narinder Gupta.
In a personal injury suit, the plaintiff bears the burden of proving a *1001 causal relationship between the accident and any alleged injuries. American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Chambers v. Graybiel, 25,840 (La.App.2d Cir.06/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. Whether the accident caused the plaintiff's injuries is a factual question which should not be reversed on appeal absent manifest error. Id.
Considering Dr. Baldwin's testimony, based upon his patient notes, that Harper did not complain to him about back pain until March 10, 1994, we find no error in the trial court's finding of fact in that regard. Regarding the testimony of the other witnesses, the effect and weight to be given to expert testimony rests within the broad discretion of the trier of fact. Williams v. City of Monroe, 27,065 (La. App.2d Cir.07/03/95), 658 So.2d 820, writs denied, 95-1998, 95-2017 (La.12/15/95), 644 So.2d 451, 452. Dr. Rambach, who saw Harper three times, testified that in his opinion the accident aggravated preexisting neck and back injuries. Opposing expert opinions were elicited from Dr. Brown, who saw Harper only one time on March 15, 1994, and Dr. Gupta, who did not see Harper until almost three years after the accident. It is the trial court which makes the final decision as to what experts are most credible, even where the expert testimony differs. Id. Certainly, considering the number of times Harper saw Rambach within a year after the accident, we find no error in the trial court's classification of Rambach as Harper's treating physician. Moreover, we find his conclusions to have been reasonably supported by unbiased emergency room reports which indicated arthritis in both the cervical and lumbar regions at the time of the accident and Dr. Baldwin's testimony which showed that he remained uncertain as to whether the accident or aging caused Harper's lower back and cervical pain. The trial court's choice of his testimony constituted a reasonable credibility evaluation which we may not disturb on appeal. Id.

Temporomandibular Joint
Plaintiffs next urge that the trial court erred in finding Harper's TMJ was not accident related. The evidence of record shows that Harper did not complain of any jaw pain until March 10, 1994, almost ten months after the accident. Harper was referred to Dr. Eric Geist, an oral maxillofacial surgeon. Dr. Geist testified that when Harper first saw him on July 7, 1994, some four months after her original complaint, he discovered osteoarthritis disease most prominently in the left temporomandibular joint area. He felt that this condition preexisted the accident. Dr. Geist admitted no knowledge regarding the details of the May, 21, 1993 accident, including whether or not Harper had received a blow to the face. Based upon the history Harper gave him, he assumed, with reasonable medical certainty, that the accident aggravated or caused the arthritis to have become symptomatic. The physician admitted, however, that he would have expected TMJ problems to have shown up at least two months after the accident and that it would be very unusual for a patient to go months with no complaint. Moreover, Dr. Geist testified that symptomatic osteoarthritis can occur at any time and from any number of causes including tension and teeth clinching.
After weighing and evaluating medical testimony, the trial court may accept or reject the opinion expressed by the medical expert after evaluating that testimony by the same rules applicable to other witnesses. McCartney v. Columbia Heights Nursing Home, Inc., 25,710 (La. App.2d Cir.03/30/94), 634 So.2d 927.
In this case, the court obviously rejected Dr. Geist's conclusions regarding causation of symptomatic TMJ. Certainly, considering that the evidence shows Harper to have expressed her first jaw pain complaint almost ten months after the accident, failed to seek treatment with Dr. *1002 Geist until almost four months later, and the tentative evidence concerning both the origin of symptomatic TMJ and Dr. Geist's limited knowledge concerning the accident facts, we find the trial court's rejection of his testimony to have been a reasonable determination. Without any further proof regarding this jaw condition, we find no error in the trial court conclusion regarding Harper's lack of proof of causation.

Facial and Toe Injuries
Regarding the remaining injuries, plaintiffs argue that the trial court committed manifest error in failing to award Harper damages for left side facial tingling and numbness.
Both Drs. Rambach and Brown noted that Harper complained of pain in the left side of her face. Dr. Rambach noted tingling (paresthesias) and tenderness over the left facial nerve, offered no opinion as to the cause and suggested that the problem be addressed by an oral surgeon. Dr. Brown noted the complaints and "didn't think it merited treatment." Dr. Gupta surmised that the condition may have been seventh nerve palsy, but never specifically offered an opinion as to causation. Neither Drs. Baldwin nor Geist mentioned the condition. Based upon this evidence, we find no error in the trial court rejection of damages for the facial condition as Harper failed to present adequate proof of causation.
Plaintiffs also claim that the trial court erred in failing to award damages for the refracture of Harper's big toe. Dr. Baldwin, who had previously treated Harper for a fractured right big toe, testified that Harper did not complain of any problems with her toe during her first visit with him on May 21, 1993. In a March 15, 1994 progress note by Dr. Brown regarding Harper's right foot, it was noted that the right great toe was crooked and the right foot showed arthritis and a bunion but did not mention a refracture; nor did Dr. Brown's deposition testimony. It was only Dr. Rambach, who saw Harper on March 31, 1994, who thought that she had refractured her right toe in the accident. From this evidence, a reasonable fact-finder could have found that the accident did not cause the refracture of Harper's toe. Accordingly, we find no manifest error in the trial court's rejection of Dr. Rambach's opinion and damages regarding this injury.

Lost Wages
Plaintiffs claim error in the denial of Harper's claim for lost wages.
While lost earnings need not be precisely proven, they must be shown with reasonable certainty. Carter v. Brookshire Grocery Co., 29,166 (La.App.2d Cir.02/26/97), 690 So.2d 933, writ denied, 97-0782 (La.05/01/97), 693 So.2d 734. To recover, a plaintiff must show proof to reasonably establish her claim. Id.
The trial judge denied Harper's claim based not only upon the testimony of Dr. Baldwin that Harper could work in her chosen field after the accident, but also upon the conclusion that plaintiffs presented insufficient evidence to support the claim.
Harper worked for an insurance company performing sales, collection of premiums and account alteration. Rather than a set salary, her income was based upon the percentage of premiums collected or monthly sales. In proof of her claim for lost wages, Harper and her supervisor testified that her performance declined after the accident as shown by employment records. Plaintiffs presented no expert testimony.
While indeed Harper's employment records reflect a decline in production after the accident, they reflect the same trend in the years prior to the accident. Accordingly, it is reasonable to conclude that the income decline after the accident was precipitated by the same causes as the decrease prior to the collision. Without further proof that the accident caused the decrease and/or what part of the decrease could be attributed to it, we agree with the *1003 trial court that an award for lost wages would have been speculative.

Adequacy of Damages
Harper complains that the $20,000 general damage award for mild-to-moderate aggravation of the preexisting arthritis in the neck and back, and cuts, bruises and soreness is inadequate.
Because the trial court award was included in a lump-sum judgment, it is difficult to determine the award for each item of damage. Johnmeyer v. Creel, 499 So.2d 571 (La.App. 2d Cir.1986). Moreover, the appellant's burden of proving that the fact-finder clearly abused its great discretion in the damage award is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Perritt v. Commercial Union Ins. Co., 95-1274 (La.App. 3d Cir.03/13/96), 673 So.2d 215, writ denied, 96-1751 (La.10/11/96), 680 So.2d 644; Taylor v. Dupree, 484 So.2d 986 (La.App. 3d Cir.1986), writ denied, 488 So.2d 201 (La.1986); A lump-sum award can be analyzed by asking whether the proven amount of damages is so significant in comparison to the total award as to indicate that the trier of fact was plainly wrong. Chambers, supra.
The record discloses that Harper's facial lacerations, bruises and soreness were minimal. Dr. Baldwin noted that the cuts did not require stitches nor is there any medical evidence of permanent scarring. Additionally, the evidence supports the trial court's conclusion that the accident caused only mild-to-moderate aggravation of preexisting arthritis in the low back and neck. The record also shows that Harper ceased medical treatment for her neck and back on July 21, 1994, her last visit with Dr. Rambach, until she saw Dr. Gupta on January 23, 1996. She admitted that she saw no doctors for these complaints in 1995. Accordingly, it is apparent from these facts and the trial court's decision regarding Dr. Gupta's medical expenses that the court rejected Harper's claim for damages after July 21, 1994. Based upon these facts and after applying the previously mentioned appellate standards to this lump-sum award, we are unable to say that the trial court abused its broad discretion in the $20,000 general damage award.

Dr. Gupta's Treatment Expenses
Plaintiffs also argue that the trial court erred in failing to allow Harper recovery of the expenses for Dr. Gupta's medical treatment.
Although medical expenses are a proper item of damages, a plaintiff's recovery thereof must be confined to those expenses related to the accident. Gladney v. May, 29,373 (La.App.2d Cir.05/07/97), 697 So.2d 1022, writ denied, 97-2417 (La.01/09/98), 705 So.2d 1101; Phiratsamy v. Pipes, 27,209 (La.App.2d Cir.08/23/95), 660 So.2d 172. In this case, the trial judge specifically awarded Harper damages for only mild to moderate aggravation of preexisting arthritis. Implicit, therefore, in his rejection of Dr. Gupta's treatment costs was a finding that at some point prior to her visit with Dr. Gupta three years after the accident, Harper's continued back and neck complaints were no longer accident-related. As we noted earlier, the record shows that Harper ceased medical treatment for her neck and back pain between her last visit with Dr. Rambach in July of 1994 and her first visit with Dr. Gupta in January of 1996. (She saw Dr. Baldwin for non-accident related complaints in 1995 and 1996). In light of this evidence, and Dr. Gupta's testimony, showing that degenerative and arthritic conditions worsen with time and age, we find the trial court's denial of these expenses to have been reasonably supported by the record before us.

Consortium
Plaintiffs finally claim that the trial court abused its discretion in awarding Mr. Harper only $5,000 in consortium damages.
In deliberations concerning loss of consortium, the trier of fact is given *1004 great discretion. McCrocklin v. Saterfiel, 31,144 (La.App.2d Cir.10/28/98), 720 So.2d 1258, writ denied, 98-2979 (La.01/29/99), 736 So.2d 837. Entitlement to loss of consortium is a question of fact which will not be reversed on appeal absent manifest error. Id.
In this case, the evidence shows that Hollis and Shirley Harper had been married forty-two years at the time of trial. Although Mr. Harper felt that his wife's accident had affected their marriage due to her personality changes and physical restrictions, he also testified that the accident had actually brought them closer together. Nevertheless, he took up the household tasks and had to perform some of her job duties during the time when she could not do so. We find no manifest error in the trial court's determination.

CONCLUSION
A court of appeal may not set aside a trial court's finding of fact unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The task of a reviewing court is not to assess whether the district court's factual findings are right or wrong in an absolute sense, but to ask whether the fact-finder's resolution of conflicting evidence was reasonable, in light of the record as a whole. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.01/29/96), 666 So.2d 1073. So long as a fact-finder's conclusions are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Holt v. Aetna Cas. & Sur. Co., 28,450 (La.App.2d Cir.09/03/96), 680 So.2d 117, writs denied, 96-2515, 96-2523 (La.12/06/96), 684 So.2d 937, 938.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
NORRIS, C.J., concurs with written reasons.
NORRIS, C.J., concurring.
I respectfully concur. This record suggests that Mrs. Harper's injuries were more serious than the majority has depicted them. The District Court found that Mrs. Harper reported low back pain in the emergency room on the date of the accident. Dr. Rambach, who is described as her treating physician, testified that she had degenerative disc disease that predated and was aggravated by the accident. Notably, she still had back pain when she last saw Dr. Rambach in July 1994. By the time she saw Dr. Gupta in 1996, her back pain was much worse. Dr. Gupta felt that the accident transformed a basically asymptomatic condition to one of regular pain. Back problems have hindered her ability to continue working as an insurance agent.
However, the record also shows that Mrs. Harper did not report low back pain to her family doctor, Dr. Baldwin, from whom she sought treatment for several months after the accident. The record also shows that she sought no treatment at all for accident-related injuries between July 1994 and January 1996. Inconsistent evidence must be viewed in the light most favorable to affirming the judgment. Theriot v. Allstate Ins. Co., 93-0807 (La.10/28/93), 625 So.2d 1337. Thus a rational fact finder could concludewith the majoritythat the accident caused a temporary aggravation of a pre-existing condition. By this standard, the general damage award is near the lowest affirmable amount, but I cannot say it is an abuse of the District Court's wide discretion.
For these reasons I concur.
NOTES
[1] Prior to trial, both Misty Crawford and Crowville were dismissed from the suit.