830 So.2d 379 (2002)
Jacquline WILLIAMS, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al., Defendants-Appellees.
No. 36,439-CA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*380 William E. Armstrong, Monroe, for Appellant.
Davenport, Files & Kelly by Ramsey L. Ogg, Monroe, for Appellees.
Before BROWN, WILLIAMS and KOSTELKA, JJ.
BROWN, C.J.
This appeal concerns the adequacy of the trial court's damage award to plaintiff, Jacquline Williams, who received injuries as a result of a minor automobile accident. Finding no error, however, we affirm.

Facts and Procedural History
Plaintiff, Jacquline Williams, filed suit against defendants, State Farm Mutual Automobile Insurance Co., and Tina Lee, seeking damages for injuries arising out of a minor automobile accident which occurred on January 27, 1999, on the west *381 exit ramp of 1-20 at Thomas Road in West Monroe, Louisiana. Ms. Lee, who was driving a 1997 Chevrolet 1500 pickup truck, struck the rear end of the 1998 Ford Contour driven by Ms. Williams. State Farm, Ms. Lee's insurer, paid property damages in the amount of $434.44, which included replacement of the Contour's bumper. Following the accident, Ms. Williams reported to the emergency room of Glenwood Regional Medical Center complaining of a scratch/laceration over her left eye and a headache.[1]
Emergency room physician James Eppinnette observed a small scratch above Ms. Williams' left eye which did not require dressing or suture. Ms. Williams reported mild tenderness in the area of her eye, but denied neck, shoulder, back, jaw or extremity pain. X-rays were negative for fracture or other bony pathology. Dr. Eppinnette characterized Ms. Williams' injury as common and minor.
Ms. Williams later sought medical treatment from Dr. J.D. Patterson for back, neck and jaw pain. Dr. Patterson treated her complaints with moist heat and ultrasound for three and one-half months. Ms. Williams then sought treatment from Dr. Warren Daniel on May 27 and August 27, 1999; her complaints were neck and back pain as well as migraine headaches. Dr. Daniel noted moderate tenderness in Ms. Williams' neck but otherwise his examination was normal. A CT scan revealed nothing and Dr. Daniel prescribed a muscle relaxant, an anti-inflammatory and a pain reliever for Ms. Williams.
Ms. Williams also sought treatment from Dr. Robert Deveny, a dentist specializing in orthodontics, regarding her jaw pain. Dr. Deveny first saw Ms. Williams on March 22, 1999. His diagnosis was temporomandibular joint ("TMJ") dysfunction and he opined that the motor vehicle accident on January 27, 1999, was its immediate cause. Dr. Deveny fitted Ms. Williams with an upper jaw splint on December 8, 1999. By May 2000, she had full range of motion in her jaw. Dr. Deveny felt that once Ms. Williams' jaw repositioned itself, she could begin orthodontic treatment which would take six to 12 months.
On the other hand was the testimony of Dr. Eric T. Geist, an oral maxial facial surgeon, who performed an independent medical examination of Ms. Williams on June 28, 2000. Dr. Geist observed a normal range of motion in Ms. Williams' jaw and found that she presented no TMJ problems. Regarding the causes of TMJ disorder, Dr. Geist noted that in addition to trauma, such as from a motor vehicle accident, other causes included malocclusion, as well as clenching and grinding of the teeth, both of which were present in Ms. Williams. It was Dr. Geist's opinion that the January 27, 1999, accident did not cause Ms. Williams to have TMJ disorder. While he conceded that Ms. Williams may in fact suffer from some sort of TMJ problem, which he felt was strictly muscular, he was adamant that the accident was not a causative factor.
The deposition testimony of a third dentist, Dr. Henry S. Donald, was also introduced into evidence. Dr. Donald had treated Ms. Williams in July 1998. His examination of July 1, 1998, revealed three missing teeth, severe angulations of teeth and considerable periodontal inflammation. Dr. Donald noted that there were indications that Ms. Williams was experiencing TMJ problems. On July 14, 1998, Ms. *382 Williams returned, again complaining of TMJ-related pain. X-rays showed malocclusion (misalignment of teeth), particularly on the right side, which he felt could be causing her TMJ complaints. Dr. Donald testified that before he could have treated Ms. Williams for TMJ-related problems, she would have had to have first undergone extensive cleaning and treatment, which she did not do.
In light of the testimony of the three dentists, the trial court found that Ms. Williams' TMJ problems were not causally related to the motor vehicle accident of January 27, 1999. Regarding fault, however, the trial court found that the accident was caused solely by the fault of Ms. Lee and awarded Ms. Williams general damages in the amount of $3,500 and special damages in the amount of $2,717.68. The trial court rendered judgment accordingly. It is from this judgment that plaintiff has appealed.

Discussion
Plaintiff asserts that the trial court erred in failing to award her damages for TMJ complaints. According to Ms. Williams, the evidence shows that her TMJ condition was causally related to the motor vehicle collision in that her jaw disorder was either caused or aggravated by the accident. She likewise takes issue with the trial court's decision to give more weight to the opinion of Dr. Geist, who performed an independent medical examination of her for defendants, rather than her treating dentist.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and any alleged injuries. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Methvin v. Ferguson, 35,138 (La.App.2d Cir.09/26/01), 796 So.2d 712; Harper v. Garcia, 32,142 (La. App.2d Cir.08/18/99), 739 So.2d 996. The plaintiff satisfies this burden by proving through medical and lay testimony that it was more probable than not that the injury was caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.02/20/95), 650 So.2d 757; Hughes v. Scottsdale Insurance Co., 35,043 (La. App.2d Cir.08/22/01), 793 So.2d 537; Fowler v. Wal-Mart Stores, Inc., 30,843 (La. App.2d Cir.08/19/98), 716 So.2d 511; O'Riley v. City of Shreveport, 30,107 (La. App.2d Cir.01/23/98), 706 So.2d 213, writ denied, 98-0752 (La.05/01/98), 718 So.2d 418.
Whether the accident caused the plaintiff's injuries is a factual question which should not be reversed on appeal absent manifest error. American Motorist Insurance Co., supra; Wallace v. State Farm Mutual Automobile Insurance Co., 36,099 (La.App.2d Cir.06/14/02), 821 So.2d 704; Hughes, supra; Harper, supra. The effect and weight to be given to expert testimony rests within the broad discretion of the trier of fact. Harper, supra; Williams v. City of Monroe, 27,065 (La. App.2d Cir.07/03/95), 658 So.2d 820, writ denied, 95-1998, 95-2017 (La.12/15/95), 664 So.2d 451, 452.
Credibility determinations, including the evaluation and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error. Lasyone v. Kansas City Southern Railroad, 00-2628 (La.04/03/01), 786 So.2d 682; Theriot v. Lasseigne, 93-2661 (La.07/05/94), 640 So.2d 1305.
In its written reasons for judgment, the trial court analyzed the testimony, particularly that of each expert witness, and found as follows:
In comparing the testimony of these three dentists for the purpose of deciding *383 whether or not Williams' TMJ [problem] is related in any manner to this accident, the court is unable to conclude that Williams has carried her burden of proof. For example, Dr. Deveny is equivocal in his opinion as to the cause of the TMJ [pain]. He is like the late major league baseball announcer, Harry Carey's signature comment, that "it could be, it might be, ..." but the Doctor can't say, "it is a home run." In his deposition, the attorneys for both sides valiantly attempted to pin [Dr. Deveny] down, only to fail like an Olympic wrestler attempting a takedown of his opponent and failing to succeed.
Dr. Donald took the approach that one cannot come to a conclusion about the cause of TMJ [problems], either way, until you first go about a process of scientific deduction and inference. The motor vehicle accident may have been a contributor, and Williams' TMJ [pain] may have been in remission. But, like Dr. Deveny, he can't say.
On the other hand, Dr. Geist was unequivocal in his opinion. He believes that Williams would have had to receive severe trauma on the left side of her face in order to have right side TMJ [problems]. In his opinion, there was no direct blow to the left side of Williams' face. In his opinion, she had severe malocclusion, similar to what the late Eleanor Roosevelt had.
The court therefore finds that any problems Williams may have had are not attributable to her motor vehicle accident on January 27, 1999.
Obviously, the trial court carefully considered all of the evidence regarding plaintiff's TMJ complaints and found Dr. Geist's testimony to be more persuasive than the evidence propounded by Ms. Williams. Finding Dr. Deveny's testimony to be both equivocal and inconsistent, the trial court chose to rely upon the opinion of Dr. Geist. Inasmuch as this factual determination is supported by the record, it will not be disturbed.
Likewise, the record contains ample support for the trial court's conclusion that there was no causal connection between plaintiff's TMJ problems and the automobile accident.
Plaintiff next argues that the trial court's award of $3,500 in general damages for her soft tissue injuries is inadequate and asks this court to increase her award.
The trier of fact is accorded much discretion in fixing general damage awards. La.C.C. art. 2324.1. General damages are those that may not be fixed with pecuniary exactitude. Such damages involve mental and physical pain and suffering, inconvenience, the loss of physical enjoyment or other losses of lifestyle that cannot be definitively measured in monetary terms. Orea v. Scallan, 32,622 (La. App.2d Cir.01/26/00), 750 So.2d 483; Caldwell v. Smith, 25,956 (La.App.2d Cir.08/17/94), 641 So.2d 1011.
In making damage awards, the discretion of the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Wallace, supra. Each case is different and the adequacy or inadequacy of the award should be determined by the facts and circumstances particular to the case under consideration. Youn, supra; Methvin, supra.
In reviewing a damage award, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the *384 trier of fact's discretion. Id. Only if the reviewing court finds that an abuse of discretion has occurred may it consider whether the contested award is truly disproportionate to past awards for similar injuries. Id.; Bass v. Allstate Insurance Co., 32,652 (La.App.2d Cir.01/26/00), 750 So.2d 460.
In reviewing the propriety of the trial court's award, we first observe that it is uncontradicted but that this accident involved an extremely minor impact. When she presented to the Glenwood emergency room, Ms. Williams' only complaints were a headache and a laceration or scratch over her left eye, which Dr. Eppinnette opined was caused by plaintiff's eyeglasses. Prior to obtaining additional medical treatment, plaintiff sought the advice of an attorney. Thereafter, she was treated by Dr. Patterson for back and neck pain for approximately two months, from February 1, 1999, until April 1, 1999. On that date, Ms. Williams had no pain related to the accident and was released by Dr. Patterson. He noted that on all examinations, Ms. Williams had a full range of motion in all directions.
Ms. Williams returned to Dr. Patterson on May 21, 1999, complaining of a headache. Upon the advice of her attorney, she sought treatment from Dr. Daniel six days later. On that date, May 27, 1999, four months post-accident and after she had been symptom-free for approximately two months, plaintiff had developed limited range of motion in her neck. Ms. Williams saw Dr. Daniel on two occasions, with a three month gap between visits. Dr. Daniel noted in his deposition that he was unaware that plaintiff had been treated and released by another doctor prior to her treatment with him.
Contrary to plaintiff's characterization, her injuries did not have a seven month duration. The evidence shows a two month gap between Ms. Williams' release by Dr. Patterson with absence of neck and back pain and her first visit with Dr. Daniel. Furthermore, there is a three month gap between plaintiff's two visits to Dr. Daniel. We cannot say that the trial court abused its discretion in awarding Ms. Williams general damages of $3,500.

Conclusion
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant, Jacquline Williams.
NOTES
[1] Ms. Williams' son J'Quincey was with his mother when the accident occurred. Although there is testimony that J'Quincey was injured, there is nothing in the record to indicate the nature or severity of his injuries.