741 So.2d 65 (1999)
Emma Lou BROUSSARD, PlaintiffAppellee,
v.
WAL-MART STORES, INC. and Randy Broussard, DefendantsAppellants.
No. 98-813.
Court of Appeal of Louisiana, Third Circuit.
January 20, 1999.
Writ Denied April 1, 1999.
*66 Steven Broussard, Lake Charles and Randall E. Hart, Lake Charles, for Emma Lou Broussard.
John Goulding Swift, Lafayette, for Wal-Mart Stores, Inc., et al.
Donna Adorno, Baton Rouge, for State Dept. of Health & Hospitals.
Before THIBODEAUX, DECUIR and GREMILLION, Judges.
THIBODEAUX, Judge.
Emma Broussard slipped in spilled dishwashing detergent and fell in the Wal-Mart store in Crowley, Louisiana, sustaining injuries to her left arm and shoulder. Following a trial on the merits, the trial court found Wal-Mart to be 100% at fault in causing the accident and awarded Mrs. Broussard $35,000.00 in general damages and $321.89 for medical expenses. It also awarded $4,178.04 to the intervenor, the State of Louisiana, through the Department of Health and Hospitals, for medical expenses paid on behalf of Mrs. Broussard. Because the circumstantial evidence is sufficiently persuasive to prove constructive notice under La.R.S. 9:2800.6 of the existence of the condition which caused Mrs. Broussard to slip and fall, we affirm the judgment of the trial court.

I.

ISSUES
We shall consider:
1. whether Mrs. Broussard proved by a preponderance of the evidence that Wal-Mart had constructive notice of the spill;
2. whether Mrs. Broussard was comparatively at fault for the accident; and,
3. whether a percentage of fault should be assessed against an unknown third party customer.

II.

FACTS
On April 17, 1995, Emma Broussard was shopping with her daughter, Ethel Pinion, in the Wal-Mart store in Crowley, Louisiana. Mrs. Broussard was walking down the aisle in the household chemicals department when her left foot slipped in spilled dishwashing detergent, causing her to fall forward. She struck her left knee and landed with her left arm stretched outward. Brenda Landry, the manager of the household chemicals department, was on vacation when the accident occurred. Pinion attempted to find a store employee for assistance and found Ethel Menard, the manager from the next department.
Pinion testified that Menard then alerted management. Percy Broussard, the assistant manager, was called to the scene. He noted that the spill on the floor appeared to be Joy dishwashing detergent. Despite Wal-Mart's policy requiring an employee to attempt to locate the source of a leak after an accident, Mr. Broussard admitted that he did not make an effort to find the bottle in question. He completed an incident report, noting that the accident occurred at 12:35 p.m. He admitted that he did not know who, if anyone, was working in the household chemicals department at the time of the accident.
Ronald Miniex, a Wal-Mart stockman, was working in the sporting goods department at the time of the accident. He testified that he walked upon the accident scene while assisting another customer. Pinion told him that there was a spill on the floor. Miniex took three Polaroid pictures of the spill before cleaning it up. He testified that he did not see anyone working in the household chemicals department, *67 and said that he was not helping to oversee that department at the time of the accident. Miniex agreed that he was apparently the closest employee to the household chemicals department, which consists of three full length aisles. He admitted that he did not know who, if anyone, was covering the household chemicals department while Brenda Landry was on vacation.
The pictures taken by Miniex show a long, elongated spill that spans over three to four tiles. Each tile covers approximately one square foot. The pictures also show a partially empty bottle of Lemon Joy on the shelf above the spill. Percy Broussard testified that after examining the pictures on the day of the accident, he realized that the bottle on the shelf was the source of the spill. The bottle was retrieved "much later on in the afternoon," several hours after the accident occurred. The bottle was not saved, despite Wal-Mart policy requiring that such evidence be preserved.
John Clark, the employee in charge of performing safety sweeps, testified as to the nature of his job. He explained that he and James Verdin shared the job of performing safety sweeps of the entire store twice a day. However, Verdin was on vacation the day the accident occurred. Clark testified that usually the order to conduct a safety sweep was announced by the loudspeaker between 10:00 to 10:30 a.m. and between 2:00 to 3:00 p.m. Records are not kept to verify the performance of a safety sweep or to note the time that a safety sweep is performed.
Randy Broussard, the manager of the Wal-Mart store, was present in the store when the accident occurred, but he did not investigate the accident. In deposition, he testified that Ronald Miniex was covering the household chemicals department while Brenda Landry was on vacation. Randy acknowledged that after Miniex's deposition was taken, it was mentioned that Miniex testified he was not covering that department. Subsequently, several days before trial, Randy stated Brandon Hoffpauir was the employee overseeing the department for Landry. However, Randy testified that Hoffpauir worked from 4:00 a.m. until noon; thus, Randy admitted that if Hoffpauir was working in the household chemicals department on the day of the accident, he would have been gone at 12:35 p.m., the time the accident occurred.
Randy also testified as to Wal-Mart's zone defense policy. He explained that two to three times a day, announcements are made over the loudspeaker to remind employees to check their areas for safety and to "front" the merchandise by pulling products to the front of the shelf. Employees are also instructed to perform a zone defense before they leave for lunch or take a break. Randy stated that it would be unacceptable for thirty minutes to elapse without an area being checked. However, records are not kept to verify that an employee has completed a zone defense.

III.

LAW AND ARGUMENT

Constructive Notice
Louisiana Revised Statutes 9:2800.6, as revised in 1990 and in effect at the time of the action[1], provides in relevant part:
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant *68 and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
In White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97); 699 So.2d 1081, the Louisiana Supreme Court interpreted La.R.S. 9:2800.6 and expressly overruled Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95); 655 So.2d 309. In Welch, the court found that the plaintiff proved constructive notice by showing the lack of written inspection procedures, the lack of documentation that inspections had been performed, and the lack of a consistent inspection policy. The court stated that the fact finder could have disbelieved positive evidence put forth by the defendant showing the lack of a spill minutes before the fall. As the court in White noted, constructive notice was proved in Welch without a showing that the condition existed for a period of time prior to the occurrence and with a shifting of the burden of proof to the defendant to prove the exercise of reasonable care. In overruling Welch, the court explained:
This statute is clear and unambiguous. The statute uses the mandatory "shall." Thus, in addition to all other elements of his cause of action, a claimant must also prove each of the enumerated requirements of Section (B). The conjunctive "and" follows Section (B)(2). Thus, Sections (B)(1), (B)(2), and (B)(3) are all mandatory....
Constructive notice, at issue here, is defined by Section (C)(1). The definition is ... clear and unambiguous. There is a temporal element included: `such a period of time ...' The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall....
Though there is no bright line time period, a claimant must show that `the condition existed for such a period of time...' Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period.
A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
White, 699 So.2d at 1084-85 (footnotes omitted).
The court in White cited four cases to support its assertion that proving constructive notice is not "an impossible burden." See Treadaway v. Shoney's Inc., 93-1688 (La.App. 4 Cir. 2/25/94); 633 So.2d 841; Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4 Cir.1993), writ denied, 94-244 (La.3/18/94); 634 So.2d 859; Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3 Cir.1993); Cobb v. Wal-Mart Stores, Inc., 624 So.2d 5 (La.App. 5 Cir. 1993). The plaintiffs in these cases did not present eyewitness testimony as to when the substance was spilled on the floor. Rather, the fact finder inferred from a set of facts that the substance was on the floor for such a period of time that it would have been discovered had the merchant exercised reasonable care.
For instance, in Oalmann, the court found that the merchant, K-Mart, had constructive *69 notice based on a "totality of the circumstances" which did not include evidence establishing precisely how long the floor was wet prior to the plaintiff's fall. Oalmann, 630 So.2d at 913. The court noted that K-Mart had knowledge that it was raining outside on the day of the accident and stated that K-Mart should have known the floor where the accident occurred would become slippery. Moreover, the court emphasized that considering the volume of business conducted at the store and the constant influx of customers, it was foreseeable that the floor would become slippery in a short period of time. Notably, there was no direct evidence presented by the plaintiff to establish that the substance was on the floor for any length of time prior to the accident.
In this case, the trial court rendered its judgment approximately two months before the judgment in White was rendered. Thus, we will examine the entire record to determine whether Mrs. Broussard met the burden of proof required by La.R.S. 9:2800.6 as interpreted in White. Reviewing the evidence in light of the White decision, we find that Mrs. Broussard proved that Wal-Mart had constructive notice of the spill. A reasonable inference from the circumstantial evidence presented by Mrs. Broussard is that it is more probable than not that the spill existed for some period of time prior to the accident. The facts and circumstances of the case lead fairly and necessarily to the conclusion that Wal-Mart had constructive notice of the spill.
The pictures taken by Miniex show that the spill is elongated, not uniform, and covers approximately three to four tiles, suggesting that it had spread over a period of time. According to the testimony of Wal-Mart management, the accident occurred on the third busiest day of the week in one of the busiest departments of the store. This department has had more than its share of slip and fall accidents. Moreover, the evidence supports the conclusion that no one was working in the household chemicals department when the accident occurred. Brenda Landry, the department manager, was on vacation. Ronald Miniex, the stockman who was identified by Randy Broussard in deposition as the employee responsible for covering that department, testified that he was working in the sporting goods department on the day the accident occurred. The problem with Wal-Mart's zone defense policy is that it cannot be effective if no one was assigned to work in the area where the accident occurred. In addition, one of the two employees responsible for performing safety sweeps throughout the store was also on vacation. While the evidence that the area was not properly staffed, and thus not properly inspected, is not determinative, combined with the other circumstantial evidence, we find that Mrs. Broussard has met her burden of establishing that Wal-Mart had constructive notice of the spill.
We note that at trial, Randy Broussard changed his testimony from his deposition testimony and said that Brandon Hoffpauir, not Ronald Miniex, was working in the household chemicals department on the day of the accident. Wal-Mart contends that the pictures taken by Miniex support this argument as the area depicted in the pictures looks as if it was recently zoned. However, Hoffpauir left work at noon on the day of the accident. Even if he checked his area before he left, thirty-five minutes still elapsed from the time he left until the time of the accident. As noted earlier, Randy Broussard testified that it would be unacceptable for thirty minutes to elapse without an area being checked. Thus, our conclusion would not change even if we accepted that Hoffpauir was working in the household chemicals department on the day of the accident. We further note that it is questionable whether the area where the accident occurred was "recently zoned" before the accident. According to Wal-Mart's zone defense policy, an employee is supposed to pull all products to the front of the shelves *70 when checking an area; however, the pictures show that not all of the shelves appear to be "fronted" with merchandise.
We conclude that Mrs. Broussard has carried her burden of proving constructive notice as mandated by La.R.S. 9:2800.6. The circumstantial evidence establishes that the spill existed some time before the accident occurred. While there was no eyewitness to testify as to when the spill occurred, it can be inferred from the totality of the circumstances that the substance was on the floor for a long enough period of time that it would have been discovered had Wal-Mart exercised reasonable care. As recognized earlier, the absence of direct evidence is not fatal to Mrs. Broussard's claim. This case mirrors the typical slip and fall case where the plaintiff is unlikely to know that a spill is on the floor until after she falls. As a result, the plaintiff cannot testify on her own behalf as to the length of time that the spill existed on the floor. Thus, the plaintiff must rely upon circumstantial evidence. We conclude that the plaintiff satisfies her burden where, as in this case, the circumstantial evidence establishes that the spill existed on the floor for some period of time prior to the accident such that it would have been discovered had the merchant exercised reasonable care.
We are cognizant that the second circuit in O'Brien v. Wal-Mart Stores, Inc., 31,032 (La.App. 2 Cir. 10/28/98); 720 So.2d 1263 recently concluded that insufficient evidence was presented by the plaintiff to show that oil was on the floor for some period of time prior to the accident. We recognize some similarities with O'Brien. However, the differences are too substantial to place much reliance on O'Brien. For instance, in O'Brien, there was much uncertainty regarding where the oil came from; in this case, the leaking bottle was found. In O'Brien, the accident happened at approximately the same time as when an inspection occurred which detected the absence of a foreign substance on the floor; in this case, there was at least a thirty minute time span without an inspection. Furthermore, O'Brien involved a spill of three to five inches, whereas the facts in this case show that the liquid detergent apparently had leaked from a bottle and was spread over an approximate four feet area.

Comparative Fault
Wal-Mart contends that the trial court was manifestly erroneous in finding that Mrs. Broussard was not comparatively at fault in causing the accident. Wal-Mart emphasizes that as Mrs. Broussard was talking to her daughter in the moments before the accident, she failed to exercise reasonable care for her safety. If Mrs. Broussard had been looking at the floor, she would have seen the spill and avoided it.
We conclude that the trial court was not manifestly erroneous in finding that Mrs. Broussard was not at fault in causing the accident. A customer has the duty to use reasonable care and to avoid obvious hazards. This duty is diminished if shelved merchandise distracts the customer. Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La.App. 3 Cir.), writs denied, 629 So.2d 391, 392 (La.1993). In this case, Wal-Mart has not established that Mrs. Broussard failed to exercise reasonable care. At the time of the accident, Mrs. Broussard and her daughter, Ethel Pinion, were looking for cleaning supplies in the household chemicals department. Mrs. Broussard was walking down the aisle and talking to Pinion when she slipped. The photographs of the spill show that the yellow detergent on the floor is not highly visible. In fact, even Pinion did not see the spill before the accident occurred. Moreover, although Mrs. Broussard testified that she could not remember who was pushing the basket at the time of the accident, Pinion testified that it was Mrs. Broussard. If Mrs. Broussard was pushing the basket, then she did not have a clear view of the floor. Considering the evidence, we find that the trial court was not clearly wrong in concluding *71 that Mrs. Broussard was not at fault in causing the accident.

Fault of a Third Person
Wal-Mart alleges that the trial court was manifestly erroneous in failing to allocate a portion of the fault to an unknown third party customer. Percy Broussard, the assistant manager, testified that there was nothing about the spill that would lead him to believe that it was caused by a Wal-Mart employee, and it was his determination that Wal-Mart did not cause the spill. We hold that the trial court did not err in refusing to allocate a portion of the fault to an unknown customer. There is nothing in the record to support Percy Broussard's speculation as to the cause of the spill. Wal-Mart failed to present any evidence to establish that a third party customer was at fault in spilling the detergent.

IV.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court is affirmed. Wal-Mart Stores, Inc. is cast for all costs of this appeal.
AFFIRMED.
DECUIR, J., dissents and assigns reasons.
DECUIR, J., dissenting.
I respectfully dissent.
In White v. Wal-Mart Stores, Inc. 97-0393(La. 9/9/97); 699 So.2d 1081, the supreme court held that La.R.S. 9:2800.6 clearly contains a temporal element. The court said, "The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall." Id. at 1084. The court noted that the plaintiff must establish some time period. Id. "Because it is the claimant's burden to prove its existence for some period of time, the absence of evidence cannot support the claimant's cause of action. Rather, the absence of evidence is fatal to the claimant's cause of action." Id. at 1086.
In Alexander v. Wal-Mart Stores, Inc., 96-1598 (La.App. 3 Cir. 2/4/98); 707 So.2d 1292, this court, after remand from the supreme court, applied the White standard to reverse the trial court where the plaintiff established no time period but the record reflected that the floor had not been mopped for at least one hour. The majority opinion does not distinguish Alexander, and I find no basis to do so.
In the present case, the plaintiff presented no positive evidence regarding how long the spill had been on the floor and the majority finds, based on circumstantial evidence, that the spill existed for at least thirty-five minutes. The majority attempts to bolster this conclusion by reference to arguments regarding the shape of the spill and possible elapsed times that might be inferred from its appearance. However, Wal-Mart correctly notes that these arguments appear only in Broussard's brief. They were not raised at trial and, therefore, they are not properly before us. Moreover, the majority in considering these arguments assumes facts which are not in evidence. Specifically, they conclude that the size of the spill indicates it existed for a long period of time. There is no expert testimony to support that conclusion, and the conclusion fails to consider other explanations.
In any event, the arguments relied on by the majority do not constitute the positive evidence required by the statute. Broussard made no effort to establish the temporal element required by White. She put on no expert testimony to support the majority's conclusion regarding the spill. In fact, she failed to raise the argument at trial. While the record may suggest that Wal-Mart did not adequately staff the area, under the provisions of La.R.S. 9:2800.6 as applied by the supreme court *72 in White, that alone is not sufficient to carry the formidable burden of showing that the condition existed for a sufficient period to allow the merchant to discover its existence with the exercise of reasonable care.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] We note that the legislature has since amended La.R.S. 9:2800.6, effective May 1, 1996. All references to this statute refer to the 1991 version in effect until May 1, 1996.