| THIBODEAUX, Judge.
Dale Hartford slipped in rainwater and fell in the Wal-Mart store in Franklin, Louisiana. She sustained injuries to her right knee and lower back. After a bench trial on the merits, the trial court apportioned fault for the accident between Wal-Mart, eighty-five percent, and Mrs. Hartford, fifteen percent. Mrs. Hartford was awarded $25,000.00 in general damages, $9,467.61 in medical expenses, and $580.00 in special damages for household and yard work. David Hartford, Mrs. Hartford’s husband, was awarded $1,500.00 for loss of consortium.
Wal-Mart appeals. We affirm the judgment of the trial court.

'ISSUES

We shall consider:
1. whether the trial court erred when it found that Wal-Mart had constructive notice of the condition and failed . to timely clean the substance, which resulted in the plaintiffs injuries;
2. whether the trial court erred when it failed to assess a greater percentage of comparative fault on the plaintiff.

FACTS

On the morning of February 28, 1995, Mrs. Hartford went shopping at the Wal-Mart store in Franklin, Louisiana. It had been raining that morning. When Mrs. Hartford arrived at Wal-Mart, it was drizzling. As she entered the store, she was greeted by a Wal-Mart employee, Terry Eldridge, who offered her a sales circular. Mr. Eldridge was to her right on the opposite side of a rail that separated the entrance from the exit. According to Mrs. Hartford, the circulars were in the basket of a | ^wheelchair shopping cart which was positioned next to the railing. She did not accept the circular and continued into the store.
There were mats on the floor in the vestibule and one in front of the door where Mrs. Hartford entered. She wiped her feet on the mat in the vestibule, and entered the store, crossing the mat in front of the entrance doors. As she stepped off the mat in front of the door, she slipped in a puddle of water. She landed on her right knee, then fell onto the floor. When she stood up, her leg and the back of her shorts were wet with water.
Mr. Eldridge was employed by Wal-Mart as a greeter. On the day of Mrs. Hartford’s accident, he arrived at work at 8:45 a.m. That day he was performing four duties: checking customers’ sales slips as they exited the store, greeting customers as they entered the store, watching for rainwater that accumulated in front of the entrance door, and mopping that area as needed. He was stationed in front of the exit doors where he greeted exiting customers and checked their sales slips. He would also turn toward the entrance and greet customers he happened to see entering the store.
According to Mr. Eldridge, the store was operating under its “rainy day” schedule. Wal-Mart’s procedure requires the placement of extra floor mats and “wet floor” caution signs at the store entrance for rainy days. He testified there were mats in the vestibule of the entrance, a warning cone in the vestibule, and a wet floor caution sign inside the store entrance. There was one mat inside the store entrance which was placed sideways in front of two doors, as opposed to lengthwise in front of one door.
When he arrived for work, Mr. Eldridge noticed the floor in front of the entrance doors “looked a little damp,” so he ordered *1084 a dry mop and mopped the floor. |aHe testified that he checked the floor in' front of the entrance door every chance he got and that he had mopped the floor there three to four minutes before Mrs. Hartford fell. Due to the rail separating the exit from the entrance, he had to exit the store, then re-enter through the entrance to mop the area in front of the entrance doors when needed. Mr. Eldridge did not recall seeing Mrs. Hartford walk into the store and denied offering her a sales circular, claiming he did not hand out circulars that day. He testified that he did not see Mrs. Hartford until he heard her scream; then he saw her on the floor on her hands and knees. At that time, he went to the customer service desk and asked the employee there to call a manager. He denied mopping the floor after Mrs. Hartford fell, testifying that he checked the floor but it was dry. He also denied seeing water on Mrs. Hartford’s leg or shorts.
Lee Carlton, assistant manager of the store, arrived at the scene of the fall after being notified. He did not see water on the floor when he arrived; however, he testified that the greeter should have mopped the floor immediately after the fall. He also testified that he did not see a “wet floor” caution sign or cone in front of the entrance when he arrived on the scene. Mrs. Hartford testified that Mr. Carlton tore a piece of a sales circular in the wheelchair basket and wrote her name on it. He did not recall what he wrote the information he obtained from her on, but testified that circulars were usually available and offered to customers at the end of and beginning of each month. After speaking with Mrs. Hartford, he returned to his office and prepared an accident report. Thereafter, he returned to the entrance and took two photographs of the area where Mrs. Hartford slipped. The photographs taken by Mr. Carlton depict a warning cone in the vestibule, a “wet floor” caution sign to the left of the entrance door used by Mrs. Hartford, and a basket near the “wet floor” 1 ¿caution sign. Mrs. Hartford was not present when Mr. Carlton prepared the accident report or when he took the photographs attached to the report.
The trial court accepted Mrs. Hartford’s testimony over Mr. Eldridge’s, concluding that she slipped “on accumulated water in an area inside of the store near the floor mat, as she testified.”

STANDARD OF REVIEW

A trial court’s findings of fact may not be reversed absent manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993). Evaluations of credibility and reasonable inferences of fact should not be disturbed on review. When reviewing the trial court’s findings of fact, the áppellate court must review the entire record to determine whether the trial court’s conclusion was a reasonable one. Id. If the trial court’s findings are “reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 882-83, quoting Housley v. Cerise, 579 So.2d 973 (La.1991).

LAW AND ARGUMENT

La.R.S. 9:2800.6

Under La.R.S. 9:2800.6 B Mrs. Hartford had to prove that Wal-Mart created or had actual or constructive notice of a condition that caused damage to her. Constructive notice is defined by La.R.S. 9:2800.6 C(l):
“Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee in the vicinity in which the condition exists does not, alone, | Rconstitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable *1085 care should have known, of the condition.
Constructive notice is defined to include a temporal element, “such a period of time ... [.]” White v. Wal-Mart Stores, Inc., 97-393 (La.9/9/97); 699 So.2d 1081. The Louisiana Supreme Court addressed the constructive notice requirement in White, p. 4 at 1084-86, stating:
The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall....
Though there is no bright line time period, a claimant must show that “the condition existed for such a period of time ... [.]” Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall.
According to the court in White, “[tjhis is not an impossible burden.” White, p. 4 at 1088. The court cited the case of Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4 Cir.1993), writ denied, 94-0244 (La.3/18/94); 634 So.2d 859, as one of four examples where the claimant did carry the burden of proving that the condition existed for some time period prior to his fall, thus fulfilling the constructive notice requirement. White, 699 So.2d 1081. In Oalmann, as in this case, the plaintiff slipped and fell in rainwater at the entrance of the store. There was no “positive evidence” as to the length of time the rainwater was on the floor before the plaintiff slipped in it. The trial court determined “[gjiven the totality of the circumstances^. 6 K-Mart had the requisite constructive notice of the wet floor which caused the fall.” Oalmann, 630 So.2d at 913. In reaching this determination, the court noted that K-Mart knew it was raining outside and should have known the floor would become wet and slippery vnth customers entering the store.
In Norton v. Wal-Mart Stores, Inc., 97-1060 (La.App. 3 Cir. 2/11/98); 707 So.2d 489, the plaintiff slipped on a piece of wax paper that was on the floor in the store’s bakery. The Third Circuit Court of Appeal affirmed the trial court’s conclusion that Wal-Mart had either constructive or actual notice that the condition, the pieces of wax paper, was present before the plaintiffs fall. The court concluded that it was “not necessary to show the exact time period at which the piece of paper was on the floor” because Wal-Mart was aware of the condition. Id. at 493. The existence of the condition and Wal-Mart’s awareness of the condition satisfied the requirements of La.R.S. 9:2800.6 and White. See also Riolo v. National Tea Co., 98-872 (La.App. 6 Cir.1999); 726 So.2d 515, writ denied, 99-525 (La.4/9/99); 740 So.2d 633, where the court of appeal accepted the plaintiffs’ argument that they only had to prove the existence of a hazardous condition for a period of time sufficient to give the merchant constructive notice. In Riolo, the granting of summary judgment in favor of the defendant was reversed and the plaintiffs were not required to prove the length of time the plastic bag on which they tripped was present in defendant’s parking lot because they proved that plastic bags and other trash were usually loose in the store’s parking lot, creating a hazardous condition for customers as they walked in the lot.
In this case, not only did Wal-Mart know it was raining prior to Mrs. Hartford’s entry to the store, Mr. Eldridge knew rainwater was being tracked into the *1086 1 gStore and onto the floor by customers, creating a hazardous condition. We find no error with the trial court’s finding that Mrs. Hartford satisfied her burden of proof.
The trial court determined that Wal-Mart failed to exercise reasonable care, stating:
In this case, the risk of water on the floor on a rainy day at the entrance of Wal-Mart was high. Although Wal-Mart had a dry mop stationed with Mr. Eldridge at the door, Mr. Eldridge was working as an exit checker rather than a greeter. He was, in fact, separated from the entrance door by a railing. Mr. Eldridge testified that he mopped the area three to four minutes before Mrs. Hartford fell. Defendant argues that it made a reasonable effort to keep the floor of the entrance on that day, i.e. mats, caution signs, door greeter with mop and bucket, plastic bags for umbrellas and shopping carts came only through the exit doors on the other side of the metal railing.
In reviewing Wal-Mart’s procedures manual, specifically in relation to Weather Related Floor Hazards, the procedure notes the special concern for the vestibule, entry and exits. The manual directs that “Extra floor mats should be placed inside the vestibule and in the entry way.... ‘CAUTION WET FLOOR’ signs should be posted near the front vestibule doors during these periods. Greeters can be a big help in keeping management informed of weather conditions.” It is evident that Wal-Mart did not place extra mats in the entry way. Neither the Plaintiff nor the assistant manager saw the “cones” cautioning wet floors in the area where the accident occurred.
[[Image here]]
The Defendant witnesses never testified that more mats were placed at the entry way then were there on any other day. Although there was one large mat, the Wal-Mart safety manual suggests the placement of “extra floor mats.” Additionally, with the inclement weather and the flux of customers with wet shoes and umbrellas, the court does not feel that it was reasonable to place an employee at the front exit doors rather than the -entrance doors where people were coming in from the rain.
| sOur review of the record reveals additional support for the trial court’s findings in this matter. Wal-Mart provides plastic bags for customers’ wet umbrellas. Mr. Eldridge testified that it was his duty to ask customers entering the store with umbrellas to place them in the plastic bags. However, he admitted that he did not see every customer entering the store because of his duties as exit greeter. According to his testimony and the pictures taken by Mr. Carlton, the plastic bags for umbrellas were not in a location that was in open view of customers entering the store. Therefore, customers with umbrellas may have entered the store without Mr. Eldridge’s knowledge and not placed their umbrellas in plastic bags, increasing the likelihood of rainwater dripping from the umbrellas onto the floor. Additionally, the placement of one mat sideways in front of the two entrance doors, rather than one mat placed lengthwise in front of each door, reduced the area of the floor covered by the mat and increased the likelihood of rainwater from customers feet and umbrellas reaching the floor.
Last, we find Mr. Eldridge’s testimony that he mopped the floor three to four minutes before Mrs. Hartford fell less than reliable. Along with his duties of greeting exiting customers and checking their sales slips, he had to greet entering customers and watch the entrance for rainwater. After noticing rainwater, he had to leave his post at the exit, actually exit and re-enter the store, obtain the mop, mop the floor, replace the mop, exit the store again or traverse a portion of the store to return to his post, and resume his duties at the exit. Under these circumstances, we find it un *1087 likely that Mr. Eldridge’s concept of time was accurate.
Accordingly, we find no error with the trial court’s conclusion that Wal-Mart failed to exercise reasonable care in light of the hazardous condition presented by rainwater at the entrance of the store.
| sApportionment of Fault
Wal-Mart contends the trial court committed error in failing to assign a larger percentage of fault to Mrs. Hartford. The allocation of fault among the parties is a factual determination which is subject to the manifest error standard of review. Clement v. Frey, 95-1119 (La. 1/16/96); 666 So.2d 607. Wal-Mart argues that Mrs. Hartford’s failure to wipe her feet on the mat in front of the entrance door, her failure to watch where she was walking as she stepped off the mat, and her failure to see the “wet floor” caution sign warrant the assessment of a higher percentage of fault to her.
Wal-Mart did not present any evidence to show that Mrs. Hartford’s shoes were wet when she stepped off of the rug. Furthermore, Mrs. Hartford’s attention was distracted by Mr. Eldridge as she entered the store as he greeted her and offered her a sales circular; therefore, her duty to use reasonable care and avoid obvious hazards was diminished. Dupre’ v. Maison Blanche, Inc., 97-652 (La.App. 1 Cir. 4/8/98); 712 So.2d 567, unit denied, 98-1239 (La.6/19/98); 721 So.2d 471. Additionally, neither Mrs. Hartford nor Mr. Carlton recalled seeing the wet floor caution signs that Mr. Eldridge testified were out when Mrs. Hartford slipped. We find no error in the trial court’s determination of fault.
The judgment of the trial court is affirmed. All costs are assessed to Wal-Mart Corporation.
AFFIRMED.