836 So.2d 465 (2002)
Michael Ray BASSETT, et al., Plaintiff-Appellant,
v.
TOYS "R" US DELAWARE, INC., Defendant-Appellee.
No. 36,434-CA.
Court of Appeal of Louisiana, Second Circuit.
December 30, 2002.
Rehearing Denied January 23, 2003.
*468 James D. Caldwell, Tallulah, for Plaintiff-Appellant.
Klotz, Simmons & Brainard by Harry Simmons, Shreveport, Eron J. Brainard, for Defendant-Appellee.
Before BROWN, GASKINS, PEATROSS, DREW and HARRISON (Pro Tempore), JJ.
BROWN, C.J.
On the morning of November 29, 1996, the day after Thanksgiving and one of the busiest shopping days of the year, Patricia Bassett entered a toy store, slipped in a puddle of rain water that had accumulated on the tile floor and fell. She and her husband Michael sued Toys-"R"-Us-Delaware, Inc. ("Toys-R-Us"). A jury found the retailer, as well as Mrs. Bassett, negligent. Both defendant and plaintiffs have appealed. We affirm that part of the judgment finding the toy store liable but find the jury's allocation of fault and damages to be erroneous and amend that portion of the judgment accordingly.

Discussion

Merchant's Liability
There is no question that the water located in the vestibule of the store presented a hazardous condition. This appeal by Toys-R-Us hinges on whether the jury was unreasonable in finding that the merchant had actual knowledge or constructive notice of the condition prior to Mrs. Bassett's accident.
La.R.S. 9:2800.6(B)(2) requires proof by plaintiff that the merchant either created the condition causing the damage or, prior to the occurrence, had actual or constructive notice of the condition. The statute defines "constructive notice" to mean that "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1).
The Supreme Court addressed the statute's definition of "constructive notice" stating:
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.

*469 Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La.04/13/99), 733 So.2d 1188, 1190-91, citing White v. Wal-Mart Stores, Inc., 97-0393 (La.09/09/97), 699 So.2d 1081, 1084-85. (Emphasis added; footnote omitted).
Evidence that the hazard was there at the time of the fall is said to be insufficient to carry plaintiff's burden of proof. The store has no obligation to step up and explain; rather, an additional time period must be shown by the plaintiff. If this temporal element could be proven only by direct evidence, it would impose an impossible burden. It is unlikely that a legitimate shopper would immediately after a fall seek out other shoppers or store employees to inquire how the condition causing the fall came about or the length of time it existed. Usually the only investigation is in connection with an incident report filled out by a store employee. That the condition existed for "such a period of time" is a fact question subject to proof by circumstantial evidence. Crawford v. Ryan's Family Steak Houses, Inc., 31,911 (La.App.2d Cir.05/05/99), 741 So.2d 96; Broussard v. Wal-Mart Stores, Inc., 98-813 (La.App. 3d Cir.01/20/99), 741 So.2d 65, writ denied, 99-0486 (La.04/01/99), 742 So.2d 562.
As noted by the court in Davenport v. Albertson's, Inc., 00-00685 (La.App. 3d Cir.12/06/00), 774 So.2d 340, writ denied, 01-0073 (La.03/23/01), 788 So.2d 427, a plaintiff is not required to prove by eyewitness testimony that the hazardous condition existed for a certain number of minutes prior to the fall. Instead, the factfinder can reasonably infer from circumstantial evidence that it is more probable than not that the condition existed for such time prior to the accident that it should have been discovered and corrected. Broussard, supra.
In the instant case, the jury found that the hazardous condition existed for such a time that the store either knew or should have discovered it. In rejecting the JNOV motion, the trial court agreed with the jury, stating that the evidence of the retailer's liability was "overwhelming."
Mid-morning on November 29, 1996, the day after Thanksgiving, Mrs. Bassett and her sister, Diane Gisel, drove to the Toys-R-Us store on Mackey Lane in Shreveport, Louisiana, to shop. During that morning, heavy rain had fallen periodically but had tapered to a drizzle by the time the sisters reached the store and both ladies testified that they did not carry their umbrellas with them into the store.
At the entrance of the toy store, Mrs. Bassett and her sister walked across the permanent, electronic-sensored mats on each side of two automatic doors. Mrs. Bassett took two to three steps inside the store and slipped and fell in a puddle of rain water that had accumulated on the tile floor. Neither Mrs. Bassett nor Mrs. Gisel saw a warning sign or protective floor mat.
The store director, Cheryl Graves, noted that the day after Thanksgiving is the start of the Christmas rush and was a very busy shopping day. Ms. Graves arrived at work at 6:00 a.m. and the store opened at 8:00 a.m. Despite the rain, there was a constant stream of customers in and out of the store. Ms. Graves testified that she knew the floor at the store's only entrance was slippery because it had been raining "really hard" that morning and she was aware that rain water was being tracked into the store by customers. In fact, Ms. Graves testified that she knew prior to Mrs. Bassett's fall that the specific area in which Mrs. Bassett slipped and fell would be hazardous. Ms. Graves stated that there should have been caution, wet floor signs and a large, removable "walk off" *470 mat in place prior to Mrs. Bassett's fall. The mat allowed those entering the store on rainy days to "walk off" the water. The mat, which was made of astroturf type material, was very large and required two to four employees to move. The only time this mat was picked up was for floor care or cleaning, which may have occurred (no log or record was kept) the Wednesday before Thanksgiving.
Ms. Graves came to Mrs. Bassett's assistance and saw a puddle of water where Mrs. Bassett had fallen. Ms. Graves had no independent recollection of whether the signs and mat were actually out the morning of Mrs. Bassett's accident. She simply felt that they must have been because "it was company policy to do so" and, being the day after Thanksgiving, she "can't imagine" they weren't out. According to his time card, Marcus Ashley, head of maintenance for the toy store, the employee who was responsible for placement of the signs and mat and for mopping up rain water, did not report to work that day until 1:00 p.m. Mr. Ashley did not testify and defendant did not introduce any evidence that there was another employee at the store at the time of Mrs. Bassett's fall who undertook Ashley's responsibilities.
Ms. Graves had Mrs. Bassett fill out an incident report and had Mrs. Gisel sign as a witness to the accident; however, this incident report was lost. Its contemporaneous reflection on whether the mat and signs were in place would have been helpful. We further note that Ms. Graves testified at trial that she saw a puddle of water, which presumably would have been "walked off" if the mat had actually been in place.
Ms. Graves noted that there was no written policy regarding floor cleaning or inspection for rainy days. She further stated that there was no log or journal which would show when an area was cleaned or inspected. Ms. Graves claimed that employees are trained to be "extra cautious" during rainy weather and to look out for hazards.
Not only did Ms. Graves know that it was raining on one of the busiest shopping days of the year, she knew that, from the time she opened the store at 8:00 a.m., rain water would be tracked into the store and onto the floor creating a hazardous condition. Mrs. Bassett and her sister entered the store around 10:30 a.m. In the instant case, there is a reasonable factual basis for the jury's conclusion that the hazardous condition existed for such a period of time that it would have been discovered had the merchant exercised reasonable care. In fact, Ms. Graves and thus, Toys-R-Us, knew that water was being tracked into the store and that precautionary actions were necessary. The problem is that Ms. Graves simply "presumed" that someone put out signs and the "walk-off" mat and made sure the area was mopped.
The next question is whether the store took reasonable actions to protect its customers. There is no direct evidence that the mat and warning signs were in place. Yet, there was direct evidence from Mrs. Bassett and her sister that they were not. Critical evidence was lost by defendant, and no store employee charged with placing out the mat and signs testified. We cannot say that the jury erred in finding that the Bassetts satisfied their burden of proving negligence on the part of Toys-R-Us. See also Hartford v. Wal-Mart Stores, Inc., 99-0753 (La.App. 1st Cir.05/16/00), 765 So.2d 1081, writ denied, 00-1758 (La.09/22/00), 768 So.2d 603; Riolo v. National Tea Company, 98-872 (La.App. 5th Cir.01/26/99), 726 So.2d 515, writ denied, 99-0525 (La.04/09/99), 740 So.2d 633; Norton v. Wal-Mart Stores, Inc., 97-1060 (La.App. 3d Cir.02/11/98), 707 So.2d 489.

*471 Comparative Fault

Plaintiffs contend that the jury (and trial court in denying their motion for JNOV/additur/new trial) erred in assessing 58% of the fault to Mrs. Bassett and urge this court to lower the percentage assigned to her.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), the Louisiana Supreme Court set forth the following factors for comparing the fault of the parties:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Allocation of fault is a factual determination subject to the manifest error rule. Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00), 773 So.2d 670; Theriot v. Lasseigne, 93-2661 (La.07/05/94), 640 So.2d 1305. As set forth by the supreme court in Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212 (La. 1989), each slip and fall case must be evaluated upon its own particular facts and circumstances.
In the instant case, the jury obviously felt that Mrs. Bassett, who knew it was raining and should have known that the floor would probably be wet and slippery, should have taken precautions to prevent her fall. Therefore, we find no error in the jury's assessment of some fault to Mrs. Bassett.
We do not, however, find a rational basis in the record to support the apportionment of 58% fault to plaintiff, whose failure to observe the floor conditions was inadvertent. Toys-R-Us bears the greater degree of responsibility and must therefore bear a corresponding greater degree of fault. As noted above, plaintiff's accident occurred on a rainy day which also happened to be the busiest shopping day of the year. The store director knew of the weather conditions and had knowledge that the tile floor in the store's only entrance could be slippery and dangerous in a very short period of time given the high volume of shoppers. Notwithstanding this awareness, she did not ascertain whether the store's rainy day preventative measures were even implemented. In fact, the only direct evidence showed that the signs and "walk-off" mat were not in place. Defendant was in a superior position to have prevented Mrs. Bassett's accident given its knowledge and exclusive control over the floor conditions of the store. The risk created by Toys-R-Us's negligence was significant, as evidenced by the serious injuries sustained by Mrs. Bassett.
Having found the jury's assessment of fault to be manifestly erroneous and that the trial court erred in denying plaintiffs' motion for JNOV, we are constrained to modify the assessment by reducing it to the highest percentage a reasonable factfinder could have determined. Duncan, supra; Clement v. Frey, 95-1119 (La.01/16/96), 666 So.2d 607; Harrison v. Richardson, 35,512 (La.App.2d Cir.01/23/02), 806 So.2d 954. Under the facts of this case, we find that the highest degree of fault which could have been assessed to plaintiff is 25%.

Causal Connection between Accident and Resulting Medical Conditions
Following her fall, Mrs. Bassett and her sister continued shopping and made a toy *472 purchase before they left the store. Mrs. Bassett noted pain in her lower back and left hip/leg but wanted to try to "walk it out." The sisters then drove to Dillard's Department Store, which was in the mall located less than a block away. Because of continued pain, however, Mrs. Bassett had her sister drive her home. Thereafter, Mrs. Bassett sought emergency care at the Willis Knighton South Hospital Emergency Room. Mrs. Bassett was later diagnosed with a herniated lumbar disk and a bulging lumbar disk which required disk surgery. Mrs. Bassett subsequently developed diskitis, an infection in the disk space, where the surgery had been performed. She then developed an ischemic bowel, which required a total colectomy and ileostomy. Mrs. Bassett had the ileostomy procedure surgically reversed, then developed an intra-abdominal abscess.
Plaintiffs assert that the jury erred in failing to find a causal connection between Mrs. Bassett's accident and her ischemic bowel and intra-abdominal abscess.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and any alleged injuries. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Methvin v. Ferguson, 35,138 (La.App.2d Cir.09/26/01), 796 So.2d 712; Harper v. Garcia, 32,142 (La.App.2d Cir.08/18/99), 739 So.2d 996. The plaintiff satisfies this burden by proving through medical and lay testimony that it was more probable than not that the injury was caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.02/20/95), 650 So.2d 757; Hughes v. Scottsdale Insurance Co., 35,043 (La.App.2d Cir.08/22/01), 793 So.2d 537.
Whether the accident caused the plaintiff's injuries is a factual question which should not be reversed on appeal absent manifest error. American Motorist Insurance Co., Inc., supra; Wallace v. State Farm Mutual Automobile Insurance Co., 36,099 (La.App.2d Cir.06/14/02), 821 So.2d 704.
The evidence in this case establishes that Mrs. Bassett was not in good health prior to her accident. Furthermore, the symptoms related to her ischemic bowel and intra-abdominal abscess did not immediately manifest themselves. In fact, these were medical complications which developed after her disk surgery, the ischemic colitis in June 1997 and the intra-abdominal abscess in October 2000.
While we sympathize with Mrs. Bassett's serious medical complications, in light of the testimony of her treating physicians, all of whom were unable to find a causal connection between the accident and these particular injuries, we are unable to say that the jury erred in failing to find that Mrs. Bassett's bowel condition and infected intra-abdominal abscess were related to her slip and fall injury.

General Damages
According to plaintiffs, Mrs. Bassett's $67,500 general damage award is inadequate. In brief, the Bassetts suggest that the minimum or low range award for a herniated disk requiring surgery is $100,000.
In assessing damages in cases of offenses, quasi-offenses and quasi-contracts, much discretion is left to the trier of fact. La.C.C. art. 2324.1. It is only when the award is in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or lower the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 *473 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Killough v. Bituminous Casualty Corp., 28,329 (La.App.2d Cir.05/08/96), 674 So.2d 1091.
General damages can involve physical or mental pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment and other factors that affect the victim's life and are by their nature damages which cannot be definitively measured in terms of money. Morrison v. Kappa Alpha Psi Fraternity, 31,805 (La.App.2d Cir.05/07/99), 738 So.2d 1105, writs denied, 99-1607, 99-1622, 99-1668 (La.09/24/99), 749 So.2d 634, 635, 1120; Killough, supra; Kessler v. Southmark Corporation, 25,941 (La.App.2d Cir.09/21/94), 643 So.2d 345.
As a result of her fall, Mrs. Bassett sustained a herniated disk and a bulging disk. Her herniated disk required surgery and a diskitis infection developed at the surgical site, requiring a second hospitalization. An anesthesiologist and pain management physician, Kathleen Majors, examined Mrs. Bassett upon her readmission into the hospital for diskitis. Dr. Majors described plaintiff as "one of the sickest patients (she had) ever admitted." While plaintiff's leg pain has abated as a result of her disk surgery, she testified that her lower back and hip pain is constant and severe, even today, five years post-accident. We find manifest error in the trial court's denial of JNOV on this issue and increase Mrs. Bassett's general damage award to $100,000, which we find to be the lowest amount the jury could have reasonably awarded.

Special Damages: Medical Expenses
The jury awarded Mrs. Bassett medical expenses in the amount of $4,500. On appeal, plaintiffs assert that this award is erroneous in light of the record, which shows that Mrs. Bassett's medical expenses were $170,538.26.
A claimant's recovery of medical expenses must be confined to those expenses related to the accident. Brandao v. Wal-Mart Stores, Inc., 35,368 (La. App.2d Cir.12/19/01), 803 So.2d 1039, writ denied, 02-0493 (La.04/26/02), 814 So.2d 558; Beasley v. Yokem Toyota, 33,805 (La. App.2d Cir.08/23/00), 767 So.2d 149; Harper, supra. In order to recover, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by trauma suffered in the accident. Brandao, supra; Smith v. Clement, 01-0087 (La.App. 3d Cir.10/03/01), 797 So.2d 151, writs denied, 01-2878, 01-2982 (La.01/25/02), 807 So.2d 249, 843; White v. Longanecker, 93-1122 (La.App. 1st Cir.05/23/94), 637 So.2d 1213, writ denied, 94-1704 (La.10/07/94), 644 So.2d 640.
We find merit to plaintiffs' argument; the jury's award of $4,500 in medical expenses is erroneous and the trial court's denial of JNOV is clearly wrong. We cannot, however, award the amount sought by plaintiffs inasmuch as the record fails to support that the entirety of that amount, $170,538.26, was related to treatment necessitated by the accident. Our careful examination of the evidence reflects that plaintiffs are entitled to medical expenses in the amount of $26,288.75.[1]

Past Lost Wages
The Bassets contend that the jury's award of $7,635 for Mrs. Bassett's past lost wages is inconsistent with the wage information from the Caddo Parish School Board, her employer. The Bassetts seek *474 to have the award increased to the amount of $16,734.32. Toys-R-Us urges that the jury's award is reasonable because the Bassetts failed to produce medical evidence which connected the amount of time Mrs. Bassett was unable to work to the accident.
Awards for past lost wages are not susceptible to the great discretion given the factfinder, because lost income is subject to mathematical calculation. Worsham v. Hetrick, 34,206 (La.App.2d Cir.02/07/01), 777 So.2d 1280; Robbins v. State Dept. of Labor, 31,590 (La.App.2d Cir.02/24/99), 728 So.2d 991. Past lost income can be computed on an amount the plaintiff would in all probability have been earning at the time of trial and damages for loss of past income are not necessarily limited to a multiplier of the amount earned at the time of injury. Robbins, supra.
In the present case, the evidence showed that Mrs. Bassett's daily wage was $104.16 and $116.80 respectively as a secretary at the Caddo Parish School Board Central Office. The calculation of past lost wages involves multiplying the daily wage by the relevant time period of absence. Mrs. Bassett was absent for 94.5 days when her daily wage was $104.16 and 59 days when her daily wage was $116.80. This results in total lost wages in the amount of $16,734.32.[2] Thus, the jury erred in making its award of past lost wages in the amount of only $7,635.00. Accordingly, we hereby amend the judgment to award Mrs. Bassett lost wages of $16,734.32.

Loss of Consortium
Plaintiffs' final assignment of error is that Mr. Bassett's loss of consortium award, $5,000, is inadequate. The Bassetts ask this court to award loss of consortium damages in the amount of $25,000.
In general, a claim for loss of consortium has seven elements: (1) loss of love and affection; (2) loss of society and companionship; (3) impairment of sexual relations; (4) loss of performance of material services; (5) loss of financial support; (6) loss of aid and assistance; and (7) loss of fidelity. Brandao, supra; Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App.2d Cir.12/06/00), 774 So.2d 1093, writ denied, 01-0026 (La.03/09/01), 786 So.2d 735; Bell v. USAA Casualty Insurance Co., 30,172 (La.App.2d Cir.01/21/98), 707 So.2d 102, writs denied, 98-0712, 98-0766 (La.05/08/98), 718 So.2d 433, 434; Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). To be compensable, it is not necessary for a claim for consortium to include damages from each type of loss. Brandao, supra.
A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed only if there is a clear showing of an abuse of discretion. Id.; Quinn, supra.
We find no abuse of discretion in this case. Mrs. Bassett testified that her husband now does most of the cooking and that she doesn't keep up with her household chores like she did before the accident. She also noted that she is not as patient as she used to be. Her husband had to carry her up and down the stairs so she could bathe when she was recuperating from her diskitis and bowel condition and was confined to the first floor of their townhouse. Regarding the couple's intimate relationship, Mrs. Bassett noted that they had no marital relations for a long time and that now, the frequency is "few and far between." Mr. Bassett's testimony *475 did not add anything to the above statements made by his wife. We will therefore not disturb the jury's award of $5,000 to Mr. Bassett for his loss of consortium.

Conclusion
For the foregoing reasons, the judgment of the trial court denying JNOV as to apportionment of fault, general damages, medical expenses and past lost wages is REVERSED. The judgment is AMENDED to increase the amount of fault assessed against defendant, Toys-R-Us, from 42% to 75% and decrease the amount of fault assessed against plaintiff, Patricia Bassett, from 58% to 25%. We also AMEND the judgment to increase: Mrs. Bassett's general damage award from $67,500 to $100,000; Mrs. Bassett's medical expense award from $4,500 to $26,288.75; and Mrs. Bassett's past lost wage award from $7,635 to $16,734.32. In all other respects the judgment is AFFIRMED. In accordance with our amendment of the percentage of fault attributable to Mrs. Bassett, the damages awarded herein are subject to reduction by 25% rather than 58%. Costs of this appeal are assessed to defendant, Toys-R-Us.
HARRISON, J., dissents with written reason.
PEATROSS, J., dissents for the reasons set forth in the written dissent of Judge Harrison.
HARRISON, J. (Pro Tem), dissents.
I respectfully dissent. This record contains not one shred of evidence to prove how long the allegedly slippery condition had existed inside the entrance doors of Toys-R-Us. Under La. R.S. 9:2800.6 C(1), a plaintiff "who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." Kennedy v. Wal-Mart Stores Inc., 98-1939 (La.4/13/99), 733 So.2d 1188. This is what the jurisprudence refers to as the "temporal element."
The majority infers that because rain had been falling and customers traversing the entrance for 2½ hours, a puddle or slippery condition must have existed for long enough to prove constructive knowledge. However, the opinion in Kennedy states that rain had been falling on the evening of the accident. Despite the natural inference that puddles will accumulate during rainy weather, the Supreme Court held that such an inference could not satisfy the temporal element. A "positive showing" is required.
Following this rationale, this court and others have consistently refused to infer constructive knowledge from the fact that rain is falling and customers are using an entrance. See, e.g., Dawson v. Brookshire Grocery Co., 31,042 (La.App. 2 Cir. 9/23/98), 718 So.2d 623; Oliva v. Winn-Dixie La. Inc., 99-831 (La.App. 5 Cir. 1/4/00), 756 So.2d 444, writ denied, 00-0370 (La.3/31/00), 759 So.2d 71; Cooper v. Wal-Mart Stores Inc., 97-1723 (La.App. 1 Cir. 12/9/98), 725 So.2d 51, writ denied, 99-0524 (La.5/28/99), 743 So.2d 665; Alexander v. Wal-Mart Stores Inc., 96-1598 (La.App. 3 Cir. 2/4/98), 707 So.2d 1292, writ denied, 98-0572 (La.4/24/98), 717 So.2d 1169. Given the total absence of proof of the temporal element, I cannot agree that the jury's finding of liability is free of manifest error.
The majority attempts to lessen the effect of this fatal deficiency by stating that Ms. Graves "knew prior to Mrs. Bassett's fall that the specific area in which Mrs. Bassett slipped and fell would be hazardous." In response to leading questions by plaintiff's counsel, Ms. Graves hesitantly admitted that the area where Ms. Bassett fell would be slippery, since "to a point" it was foreseeable that the floor would become *476 slippery when wet. On cross examination, however, she testified that just because rainwater can make things slippery does not mean that the entrance was in fact slippery; she called this "speculation." From this testimony I cannot subscribe to the majority's finding that Ms. Graves had actual knowledge of an unreasonably dangerous condition.
Given the absence of proof of the temporal element, it is not really necessary for this court to discuss and deprecate the safety precautions used by Toys-R-Us. Nonetheless, Ms. Graves testified that the Astroturf mats inside the entrance doors were large and heavy, requiring several people to move and replace them. Because of their unwieldiness, they would not be removed on the day after Thanksgiving, the busiest shopping day of the year. Although Ms. Graves did not specifically recall that they were in place when Ms. Bassett fell, she repeatedly testified that she was "positive" that they were. While this may not be "direct evidence," its implications are simply too strong to dismiss entirely, as the majority does.
Given the lack of evidence of the temporal element required by R.S. 9:2800.6 C(1) and Kennedy v. Wal-Mart Stores Inc., supra, I would reverse the judgment of the trial court and render judgment in favor of Toys-R-Us. For these reasons, I respectfully dissent.

APPLICATION FOR REHEARING
Before BROWN, C.J., GASKINS, PEATROSS, DREW, and HARRISON, JJ.
Rehearing denied.
PEATROSS and HARRISON, JJ., would grant rehearing.
NOTES
[1] The record contains proof that Mrs. Bassett incurred medical expenses in excess of $200,000. Because the expenses for her ischemic bowel and intra-abdominal abscess conditions were merged with expenditures related to her disk surgery and diskitis, however, we are unable to separate out and award further amounts associated with the accident.
[2] This amount represents the wages lost by Mrs. Bassett as a result of the accident, herniated disk surgery and diskitis infection.